OPINION
{¶ 1} This matter is before the Court on the Notice of Appeal of Harold William Schafer, ("Harold") filed December 23, 2005. On November 23, 2005, the probate court overruled Harold's exceptions to the inventory of the estate of his mother, Dolly S. Schafer, who died September 6, 2004. Harold's father, Harold A. Schafer, predeceased Harold's mother on April 29, 2000. On September 16, 1998, Harold's parents executed The Schafer Family Trust, naming themselves as trustees. A Schedule of Assets is attached to the instrument, and the assets are all identified as joint property. Schedule A lists the following assets:
 {¶ 2} "1. That certain real property commonly known as 3400 Pisgah Road, Urbana, Oh 43078.
 {¶ 3} "2. That certain real property commonly known as 2929 St. Route 54, Urbana, OH 43078.
 {¶ 4} "3. That certain real property commonly known as 3250 Pisgah Road, Urbana, OH 43078.
 {¶ 5} "4. That certain real property commonly known as 2837 Short Cut Road, Urbana, OH 43078.
 {¶ 6} "5. The real property located in Florida.
 {¶ 7} "ALL OUR ASSETS IN:
 {¶ 8} "1. Citizens National Bank
 {¶ 9} "2. Perpetual Savings"
 {¶ 10} Schedule A-1 lists "NON-TRUST ASSETS (LIFE INSURANCE, ANNUITIES, AND QUALIFIED ACCOUNTS)" as follows:
 {¶ 11} "ALL OUR ASSETS IN:
 {¶ 12} "1. Prudential Insurance
 {¶ 13} "2. ITT Life
 {¶ 14} "3. Metropolitan Life
 {¶ 15} "4. BMA"
 {¶ 16} The trust instrument provides as follows: "Upon the death of the first CoT-rustor to die, hereinafter called the `Deceased Spouse', the then surviving Co-Trustor, hereinafter called the `Surviving Spouse', shall have the power to amend, revoke and/or terminate Survivor's Trust (the marital deduction trust) only, and the Bypass Trust (the exemption equivalent trust), hereinafter established, may not be amended, revoked or terminated. On revocation of Survivor's Trust, all of its assets shall be delivered to the Surviving Spouse. Revocation and amendment shall be made by written instrument filed with the Trustee."
 {¶ 17} The trust instrument further provided as follows: "Upon the death of the Deceased Spouse, the Trustee shall divide the trust estate * * * into two (2) separate trusts, designated as the Survivor's Trust and the Bypass Trust. The date of allocation may be no later than six (6) months from the date of death of the Deceased Spouse.
 {¶ 18} "1. Survivor's Trust. The Survivor's Trust shall consist of the surviving spouse's separate property that is a part of the trust estate and the surviving spouse's interest in the trustor's joint property included in or added to the trust estate in any manner, including any undistributed or accrued income on it, and the marital deduction amount identified in paragraph 2 of this article.
 {¶ 19} "2. Bypass Trust. The marital deduction amount shall be a pecuniary amount equal to the minimum amount necessary as a federal estate tax marital deduction to entirely eliminate (or reduce to the maximum extent possible) any federal estate tax on the deceased spouse's death, after taking into account all factors relevant to this estate tax objective, including but not limited to:
 {¶ 20} "a) All deductions claimed and allowed in determining the estate tax payable by reason of the deceased spouse's death.
 {¶ 21} "b) The net value of all other property included in the deceased spouse's gross estate, whether or not it is given under this instrument and whether it passes at the time of the deceased spouse's death or has passed before the deceased spouse's death to or in trust for the surviving spouse, so that it is included in the deceased spouse's gross estate and qualifies for the federal estate tax marital deduction. If the surviving spouse disclaims any property that would otherwise qualify for the federal estate tax marital deduction, this disclaimer shall be disregarded.
 {¶ 22} "c) All credits allowed for federal estate tax purposs other than any credit allowable under Internal Revenue Code Section 2011, unless and to the extent that death tax would be payable to the state or states regardless of the federal credit, as long as no credit that results in disallowance of the marital deduction is taken into account in determining the size of the Survivor's Trust.
 {¶ 23} "The Bypass Trust shall consist of the balance of the trust estate. * * *"
 {¶ 24} The Trust instrument further provided as follows:
 {¶ 25} "B. Survivor's Trust
 {¶ 26} "1. Distribution of Income and Principal. During the life of the Surviving Spouse, the Trustee shall pay to or apply for the benefit of such Surviving Spouse the entire net income of the trust in quarter-annual or more frequent intervals. Additionally, the Trustee may distribute such portion of the principal of the Survivor's Trust, up to and including the whole thereof, as the Trustee deems to be in the best interest of the Surviving Spouse.
 {¶ 27} * * *
 {¶ 28} "C. Bypass Trust.
 {¶ 29} "1. Distribution of Income. On the death of the Deceased Spouse, the Trustee shall pay to or apply for the benefit of the Surviving Spouse the net income of the Bypass Trust in quarter-annual or more frequent intervals.
 {¶ 30} "2. Invasion of Principal.
 {¶ 31} "a. Payments of principal to the surviving spouse shall be made first from the Survivor's Trust until it is exhausted, and then from the Bypass Trust.
 {¶ 32} "b. In the event of any illness affecting the Surviving Spouse, or if such Surviving Spouse should be in need of funds for support, and if the income of this trust shall be deemed insufficient by the Trustee to provide for such reasonable health, support and maintenance as set forth herein, the Trustee may, as often as it deems necessary, pay to or apply for the use and benefit of such Surviving Spouse such part of the principal of Bypass Trust, up to and including the whole thereof, as is necessary for such reasonable health, support and maintenance.
 {¶ 33} "c. Additionally, the Trustee may pay to the Surviving Spouse such part of the principal of Bypass Trust as such Surviving Spouse shall request in writing from time to time; provided, however, that the amount distributed to such Surviving Spouse during a calendar year shall not exceed the sum of Five Thousand Dollars ($5,000.00), and such right of withdrawal shall not be cumulative, but shall lapse at the end of each calendar year not so exercised."
 {¶ 34} The trust instrument further provided that, after the death of the Surviving Spouse, any remaining assets would be divided between the Schafers' three children, Patricia E. Schafer, Joyce A. Loomis, and Harold W. Schafer. When Dolly Schafer died, only Harold and Joyce were living.
 {¶ 35} On May 8, 2003, Dolly allegedly conveyed her residence, along with a majority of her real estate, valued at $630,000.00, to Harold. Harold has received income from the property since that time. On July 9, 2003, Dolly filed a complaint against Harold in the Champaign County Court of Common Pleas in an attempt to regain ownership of the property. On January 30, 2004, Dolly conveyed certain other real estate in Urbana, Ohio from the trust to herself. Also on January 30, 2004, Dolly executed her Last Will and Testament, devising all of her real and personal property to Joyce. She also allegedly revoked the trust. Dolly's Will provides as follows:
 {¶ 36} "I specifically have decided to leave nothing to my son, Harold William Shafer. The reason for this is because my son caused most of my farmland of approximately 168.482 acres to be conveyed to him by my trust. This includes my house where I am presently residing. This is actually more than half of my estate. It was my desire at all times to have my children equally share in all of the property that my husband and I owned during the course of our lives. My son has actually managed to obtain more than fifty percent (50%) of the property that my husband and I had, which was not my intention. I love all of my children equally." Dolly appointed Joyce as executor of her estate.
 {¶ 37} On May 17, 2004, the probate court held a hearing in which Dolly testified regarding her actions on January 30, 2004. The probate court determined that Dolly's will was properly executed and valid. No appeal was taken from that decision.
 {¶ 38} Joyce filed an Inventory and Appraisal which included the real property that Dolly conveyed to herself, valued at $434,000.00, along with other tangible personal property. In his Exceptions to Inventory, Harold argued that the real estate listed in the Inventory was a trust asset. Harold also reserved "the right to take exception to the non-inclusion of any annuities, cash or investments in the Inventory."
 {¶ 39} On October 19, 2005, the probate court issue a Preliminary Findings and Order. The court therein indicated that it believed, as the beneficiary of the Survivor Trust, Dolly could "amend, revoke and/or terminate the Survivor Trust and thus transfer its assets as she pleased which were all assets of the trust." The court further indicted that it believed the funding of the Survivor Trust and Bypass Trust upon Harold's death "is probably decisive", and it directed counsel to respond to the court in writing regarding their positions on the issue.
 {¶ 40} Incredibly, while both sides filed responses, neither of them addressed the issue to which the probate court specifically directed their attention. Harold argued instead that while the trust was revocable, Dolly did not revoke it and was accordingly bound by its terms. According to Harold, until the income was exhausted or insufficient to meet Dolly's needs, Dolly did not have the authority to invade the principal of the Bypass Trust. Harold argued, "[t]here has been no showing of need, there has been no showing that the income was insufficient to in any way provide for Mrs. Schafer as beneficiary, and therefore a transfer for other reasons exceeds the power of the trust." Harold also argued that the transfer of the real property from the trust to Dolly was ineffective because "the granting provision of the deed shows that the property is being transferred by the fictitious trust."
 {¶ 41} In her response, Joyce argued that, as Trustee, Dolly had broad discretion. Joyce also argued, "If the argument that Harold William Shafer is making is correct that the farm that Joyce A. Loomis now owns was somehow restricted and unable to be transferred by the Trust, then the exact same argument should be made that the house and five acres that was allegedly deeded to Harold William Schafer by his mother prior to her death was subject to the same restrictions."
 {¶ 42} In its brief decision overruling Harold's exceptions, the probate court noted that neither side "responded to the issue of the funding of the Survivor Trust and the By Pass Trust." The court determined that "following the death of Harold A. Schafer all the trust assets comprised the Survivor Trust. No assets could be allocated to the By Pass Trust. As sole Trustee, she had the right to distribute any part or all of the trust assets to her or anyone else. Since she was also the sole Trustee to require the administrative act of making a written demand upon herself would be a vain act and unnecessary."
 {¶ 43} The probate court also observed that "if transfers made by Dolly Schafer from the trust were invalid, the transfer to Harold would also be invalid. Thus the alternative is to return all assets to the trust, have complete accountings by Dolly Schafer's estate and Harold W. Schafer for all income received from the assets and treat the trust as still in existence."
 {¶ 44} Harold presents two assignment of error. His first assignment of error is as follows:
 {¶ 45} "THE TRIAL COURT ERRONEOUSLY DETERMINED THAT ALL TRUST ASSETS COMPRISED THE SURVIVOR TRUST UPON THE DEATH OF THE FIRST SPOUSE, HAROLD A. SCHAFER."
 {¶ 46} The standard of review on appeal from a ruling on exceptions to inventory is abuse of discretion. In re Platt
(2002), 148 Ohio App. 3d 132, 136. "Abuse of discretion connotes more than an error of law or judgment; rather, it implies that the trial court's attitude is unreasonable, arbitrary or unconscionable." Id.
 {¶ 47} As noted above, the funding of the Survivor Trust and the Bypass Trust was not satisfactorily established in the probate court. In his Exceptions, Harold argued that the real estate listed in the Inventory, namely "144.66 acres of vacant land located on Short Cut Road and State Route 54, Urbana, Ohio," was a trust asset. After being specifically directed by the probate court to explain the funding of the Survivor Trust and the Bypass Trust, Harold failed to address this very issue. According to the trust instrument, the Survivor Trust was to receive assets worth the maximum dollar amount which would qualify for the federal marital deduction, and the Bypass trust was to receive the balance of the trust estate. As Joyce asserts in her brief, under both Federal and Ohio Estate Tax laws in effect on the date of Mr. Schafer's death, Dolly would have had an unlimited marital deduction in her husband's property, and all the assets would have accordingly been in the Survivor Trust. Hence, the trial court correctly determined that the Bypass trust was not funded, and Dolly was free to distribute the assets in the Survivor Trust as she chose. We cannot determine that the trial court abused its discretion from the record before us. Harold's first assignment of error is overruled.
 {¶ 48} Harold's second assignment of error is as follows:
 {¶ 49} "IN OVERRULING THE EXCEPTIONS TO THE INVENTORY FILED BY APPELLANT, THE COURT ERRED IN APPARENTLY ALLOWING AN INVALID DEED TO TRANSFER REAL ESTATE OUT OF THE TRUST TO THE TRUSTEE AS AN INDIVIDUAL."
 {¶ 50} "In a proceeding to determine the validity of a deed all authorities agree that the court should inquire what was the real transaction, and that form must yield to substance."
 {¶ 51} Thiessen v. Moore (1922), 105 Ohio St. 401, 425, 137 N.E. 906. "A deed in substance following the form set forth in this section, when duly executed in accordance with Chapter 5301. of the Revised Code, has the force and effect of a deed in fee simple to the grantee." O.R.C. 5302.09.
 {¶ 52} The January 30, 2004 deed provides as follows: "KNOW ALL MEN BY THESE PRESENTS THAT THE SCHAFER FAMILY TRUST, the Grantor, grants to DOLLY S. SCHAFER, the Grantee, * * * *" the property at issue. We conclude that the incorrect form of the deed must yield to its substance; it is beyond doubt that the "real transaction" was Dolly's revocation of the subject property from the Survivor Trust. In other words, the quitclaim deed gave Dolly a fee simple interest in the property. Harold's second assignment of error is overruled, and the judgment of the trial court is affirmed.
Wolff, J. and Fain, J., concur.