[Cite as *Scanlon v. Scanlon*, 2013-Ohio-2694.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 99028 and 99052**

# JOHN J. SCANLON, ET AL.

PLAINTIFFS-APPELLANTS

vs.

# PATTI C. SCANLON, ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-659632

**BEFORE:** Kilbane, J., Stewart, A.J., and Boyle, J.

**RELEASED AND JOURNALIZED:** June 27, 2013

**ATTORNEYS FOR APPELLANTS**

Ryan P. Nowlin
David M. Lenz
James D. Vail
Schneider, Smeltz, Ranney & LaFond
1111 Superior Avenue
Suite 1000
Cleveland, Ohio 44114

**ATTORNEYS FOR APPELLEES**

**For Patti C. Scanlon**

Dennis R. Rose
DiPali Parikh
Hahn, Loeser & Parks, L.L.P.
200 Public Square
Suite 2800
Cleveland, Ohio 44114

**For Brian T. Scanlon**

Fred W. Friend
2619 Edgerton Road
University Heights, Ohio 44118

**APPELLEE/CROSS-APPELLANT**

Patrick Daniel Scanlon, pro se
122 Stanley Place
La Place, LA 70068

MARY EILEEN KILBANE, J.:

**{¶1}** This consolidated appeal arises from the trial court's decision granting summary judgment in favor of defendants-appellees, Patti C. Scanlon ("Patti"), as executor of the estate of Gertrude I. Scanlon ("Gertrude"), and Brian T. Scanlon ("Brian"). In Case No. 99028, plaintiffs-appellants, John J. Scanlon ("John") and Neil O'Donnell, III, as executor of the estate of Cecile O'Donnell ("Cecile") (collectively referred to as "plaintiffs"), appeal the trial court's decision granting summary judgment in favor of Patti and Brian.[1] In Case No. 99052, defendant-cross-claimant-appellee/appellant, Patrick Daniel Scanlon ("Patrick"), pro se, also appeals the trial court's decision granting summary judgment in favor of Patti and Brian. For the reasons set forth below, we affirm.

**{¶2}** In October 1990, Thomas P. Scanlon ("Thomas"), established the Thomas P. Scanlon Family Trust ("trust"), with Thomas as the donor and trustee. Thomas died in February 2005. Following his death, Thomas's wife for over 56 years, Gertrude, became the sole trustee and sole beneficiary of the trust. The trust also named several contingent remainder beneficiaries and specified a percentage they would receive from the remaining principal upon Gertrude's death. These beneficiaries included Thomas's siblings, Michael T. Scanlon, John J. Scanlon, and Cecile O'Donnell; children of Thomas's siblings; and Gertrude's son from a previous marriage. Upon Gertrude's death, the

---

[1]In June 2011, Neil O'Donnell, III, executor of the estate of Cecile O'Donnell, was substituted in place of Cecile O'Donnell, deceased.

remainder of the trust was to revert to the contingent remainder beneficiaries listed in the trust, with Cecile as the next surviving successor trustee. However, by the time of her death in September 2007, Gertrude had withdrawn the entire trust principal, transferring all of the trust assets to herself. The assets formerly held by the trust were divided as set forth by her will.

{¶3} After discovering that the trust was depleted, John and Cecile, the surviving brother and sister of Thomas, filed suit against Patti, as the executor of Gertrude's estate, Brian, and the other contingent remainder beneficiaries of the trust, including Patrick, in May 2008. The complaint contained one cause of action, alleging that, as trustee, Gertrude breached her fiduciary duty to the beneficiaries of the trust by failing to make written requests to herself before removing the trust's principal and distributing it to herself. At the time Gertrude became trustee, the value of the trust was $782,488.30. The complaint further alleged that the trust assets were a part of Gertrude's probate estate. Gertrude's last will and testament left her entire probate estate to Patti and Brian.[2] The complaint sought an accounting of the trust transactions during the period in which Gertrude was the trustee and the return by Patti of all property distributed to Gertrude in violation of her fiduciary duties. Patti and Brian each filed an answer and motion for summary judgment.

{¶4} In January 2009, Patrick sought leave from the trial court and filed a cross-claim against Patti in her capacity as executor of Gertrude's estate, alleging the

---

[2]Brian is Thomas's nephew, and Patti is Brian's wife.

same claims brought by John and Cecile, that Gertrude breached her fiduciary duty as trustee.[3] Patrick also filed the same pleadings and motions in probate court as he did in the general division of the common pleas court, along with a motion contesting Gertrude's will. *See In re Estate of Gertrude Scanlon*, 8th Dist. No. 95264, 2011-Ohio-1097. In May 2010, the probate court concluded that Patrick lacked standing to contest Gertrude's will because he was not a necessary party. He was not a blood relative of Gertrude, thus, he would not inherit anything from her by intestate succession. The court also found that Patrick's action contesting the validity of the will, filed two years after Gertrude's will was admitted to probate, was filed too late. As for Patrick's other claims, the probate court concluded that Patrick commenced a civil action in the general division of the court of common pleas on identical issues. Therefore, the probate court lacked jurisdiction to consider the same issues. *Id.* at ¶ 8-9.

{¶5} On appeal, we affirmed the probate court's judgment:

Although [Patrick] contends the trust funds in which he has an interest were wrongly taken by Gertrude and ultimately included as part of her estate, this remains to be proven. Thus, Patrick does not have an "immediate" interest in Gertrude's will and, therefore, lacks standing.

*Id.* at ¶ 13.

We further found:

[B]ecause Patrick first raised his claims regarding the trust in the common pleas court the probate court was correct in concluding it did not have

---

[3]Patrick's brother, Michael Scanlon, also joined in the cross-claim; however, he did not appeal the judgment of the trial court.

jurisdiction. * * * The probate court's resolution of Patrick's claims would interfere with the resolution of his claims presented in the general division, common pleas court.

*Id*. at ¶ 21.

{¶6} In the interim, in the general division of the common pleas court, Patti did not respond to Patrick's cross-claim in a timely manner and filed a late answer with a request for leave to file an answer in February 2010. This request for leave was granted on November 22, 2011, which was the same day the court granted Patti's motion for summary judgment against John and Cecile. In its decision, the trial court stated:

> The court finds the subject trust granted Gertrude Scanlon, the trust's sole beneficiary and sole trustee, the right to withdraw principal to the complete exhaustion of the trust.
>
> The court [further] finds Gertrude Scanlon, as sole beneficiary, was not required to provide written notice to herself, as sole trustee, because such action would constitute a "vain and unnecessary act."
> Defendant Patti C. Scanlon's, as executrix of the estate of Gertrude I. Scanlon, deceased, motion for summary judgment is therefore granted.

{¶7} Plaintiffs and Patrick each appealed from this decision in *John Scanlon v. Patti Scanlon*, 8th Dist. No. 97739, 2012-Ohio-2317, and *John Scanlon v. Patti Scanlon*, 8th Dist. No. 97724, 2012-Ohio-2514, respectively. We dismissed both appeals for lack of a final, appealable order, finding that the above journal entry did not address Patrick's cross-claim. After our dismissal, the trial court issued the following entry:

> This court previously granted summary judgment in favor of Defendant Patti Scanlon, as executrix of the estate of Gertrude Scanlon, and against Plaintiffs John J. Scanlon and Cecile O'Donnell.

As the court of appeals indicated, the court failed to address Defendants Patrick J. Scanlon and Michael Scanlon's cross-claims made against the estate and Brian Scanlon.

The court finds the decision to grant summary judgment in favor of Patti C. Scanlon, as executrix of the estate of Gertrude Scanlon, is equally applicable to defendants' cross-claims.

Therefore, Defendant Patti C. Scanlon, executor's motion (filed 6/26/12) for summary judgment against cross-claimants Patrick Daniel Scanlon and Michael Scanlon's cross-claim, is granted. Likewise defendant Brian Scanlon's motion (filed 7/20/12) for summary judgment vs. Defendants and Cross-Claimants Patrick Daniel Scanlon and Michael Scanlon's cross-claim is granted.

No just reason for delay.

{¶8} It is from this order that plaintiffs now appeal and Patrick, pro se, now appeals, with plaintiffs raising two assignments of error and Patrick raising six assignments of error for review. For ease of discussion, we will address the assignments of error together and out of order, where appropriate.

## Motion for Summary Judgment

### Plaintiffs' First Assignment of Error

The trial court erred in granting defendant-appellee's motion for summary judgment, because (A) the trust's requirement that Gertrude Scanlon provide written notice to the trustee was not a "vain and unnecessary act"; (B) there are genuine issues of material fact as whether Gertrude I. Scanlon breached her fiduciary duties by distributing all of the funds in the Thomas P. Scanlon trust to herself; and (c) the distributions made by the trustee were not in accordance with the trustee's discretionary standard.

### Patrick's First Assignment of Error

The trial court erred in granting summary judgment. Defendants filed no supporting evidence. Granting summary judgment was inappropriate.

Patrick's Third Assignment of Error

The trial court erred by saying Gertrude was the sole beneficiary and that she was also a settlor to the trust. Ohio law defines trust beneficiaries and when they become vested. For example, Richard (Gertrude's son) was a beneficiary and Carlin and Patti distributed trust assets to him.

Patrick's Fourth Assignment of Error

The trial court erred in not considering the intent of the sole settlor to the trust (Thomas P. Scanlon). The defendants/appellees and judges appear to have only read one four-word phrase and not the entire 17 pages of the trust deed. No where in the four corners of the trust deed are the words "wholly, purely, unlimited, without standards, solely, or for any reason" used to describe a trustee's discretion for withdrawals from the trust. By the deed and by Ohio law, Thomas "limited" a trustee's discretion. (Emphasis sic.)

Patrick's Fifth Assignment of Error

The trial court erred by not determining that defendants/appellees breached their fundamental fiduciary duties to Gertrude and all of the vested beneficiaries and self dealing.

Patrick's Sixth Assignment of Error

The trial court did not address all of the outstanding issues and material facts before granting summary judgment on 9-14-12. Case was sent back to civil court. [The trial judge] did not develop the case but granted new judgment. On one page demand by appellees/defendants.

{¶9} In the plaintiffs' first assignment of error and Patrick's first, third, fourth, fifth, and sixth assignments of error, plaintiffs and Patrick essentially argue that by granting summary judgment in favor of Patti and Brian, the trial court disregarded the terms of the trust.

{¶10} We review an appeal from summary judgment under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241; *Zemcik v. LaPine Truck Sales & Equip. Co.*, 124 Ohio App.3d 581, 585, 706

N.E.2d 860 (8th Dist.1998). In *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367, 369-370, 1998-Ohio-389, 696 N.E.2d 201, the Ohio Supreme Court set forth the appropriate test as follows:

> Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 1995-Ohio-286, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292-293, 1996-Ohio-107, 662 N.E.2d 264, 273-274.

{¶11} Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E); *Mootispaw v. Eckstein*, 76 Ohio St.3d 383, 385, 1996-Ohio-389, 667 N.E.2d 1197. Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359, 1992-Ohio-95, 604 N.E.2d 138.

{¶12} Plaintiffs and Patrick argue that Gertrude breached her fiduciary duties as trustee because she took all the trust for herself, without abiding by the following terms set forth in the trust:

> 6. Trust. * * * [T]he Trustee shall pay * * * so much of the trust principal, even to its complete exhaustion, as [Gertrude] may request in writing of such Trustee. The Trustee shall also pay to, or for the benefit of, [Gertrude] so much of the income and/or principal as is necessary, in the

Trustee's discretion, to provide liberally for her health, care, comfort and support.

{¶13} Plaintiffs claim that complying with these terms is not a "vain and unnecessary act." They contend that Gertrude, as trustee, had a fiduciary duty to all beneficiaries to comply with the terms of the trust. Gertrude breached those duties when she took "all of the property for herself" without first making a request in writing as the beneficiary and then approving the written request in her capacity as trustee. They further contend that, as trustee, Gertrude was authorized to distribute trust principal to herself, as beneficiary, for her "health, care, comfort and support."

{¶14} While the reasons underlying Gertrude's complete depletion of the trust assets are unknown, our review on appeal is confined to the record before us and the sole cause of action set forth in plaintiffs' complaint — breach of fiduciary duty. As a result, the crux of this appeal involves the following two issues: (1) does Gertrude, as the sole trustee and sole beneficiary of the trust during her lifetime, breach a fiduciary duty to herself by not giving herself written notice of withdrawal of trust principal; and (2) does Gertrude, as the sole trustee who is directed by the terms of the trust to distribute principal, breach a fiduciary duty when she distributes the entire trust principal to herself, as the sole beneficiary? The trial court answered both questions in the negative. We agree.

{¶15} In order to prove a breach of fiduciary duty claim, plaintiffs must establish:

(1) the existence of a duty arising from a fiduciary relationship; (2) a failure

to observe the duty; and (3) an injury resulting proximately therefrom. * *

* A "fiduciary" has been defined as a person having a duty, created by his undertaking, to act primarily for the benefit of another in matters connected with his undertaking.

(Citations and quotations omitted.) *Lombardo v. Mahoney*, 8th Dist. No. 92608, 2009-Ohio-5826, ¶ 18; *Gracetech Inc. v. Perez*, 8th Dist. No. 96913, 2012-Ohio-700.

{¶16} In the instant case, Thomas created the trust so that during Gertrude's lifetime, she was the sole trustee and sole beneficiary. Therefore, as the sole trustee of the trust, Gertrude owed a fiduciary duty to herself, as the sole beneficiary of the trust. According to the terms of the trust, Gertrude, as trustee was authorized to "pay * * * so much of the trust principal, **even to its complete exhaustion**, as [Gertrude] may request in writing [to herself]." (Emphasis added.) Gertrude, as trustee, "shall also pay to, or for the benefit of, [herself] so much of the income and/or principal as is necessary, in [her] discretion, to provide liberally for her health, care, comfort and support." Plaintiffs and Patrick argue that Gertrude breached her fiduciary duty by failing to make a written request to herself before distributing the trust principal. Requiring Gertrude to make a written demand upon herself, as the sole beneficiary and sole trustee, however, would be a vain act and unnecessary.

{¶17} In Ohio, "the law does not require the performance of a vain act." *Gerhold v. Papathanasion*, 130 Ohio St. 342, 346, 199 N.E. 353 (1936); *Cincinnati Gas & Elec. Co. v. Pub. Util. Comm.*, 103 Ohio St.3d 398, 2004-Ohio-5466, 816 N.E.2d 238; *Carlin v. Mambuca*, 96 Ohio App.3d 500, 512, 645 N.E.2d 737 (8th Dist.1994); *Cleveland Assn. of*

*Rescue Emps. v. State Emp. Relations Bd.*, 134 Ohio App.3d 100, 730 N.E.2d 426 (8th Dist.1999). In *In re Estate of Schafer*, 2d Dist. No. 2005 CA 45, 2006-Ohio-6126, the Second District Court of Appeals addressed an analogous situation where the surviving spouse (wife), as the sole trustee, had withdrawn the assets from the trust after her husband died and transferred them into her own trust. The probate court found that, "'[a]s sole Trustee, [wife] had the right to distribute any part or all of the trust assets to her or anyone else. Since she was also the sole Trustee to require the administrative act of making a written demand upon herself would be a vain act and unnecessary.'" *Id.* at ¶ 42. On appeal, the court affirmed the probate court's decision, stating that: "the trial court correctly determined that * * * [wife] was free to distribute the assets in the Survivor Trust as she chose." *Id.* at ¶ 47.

{¶18} Similarly, in the instant case, the plain terms of the trust authorized Gertrude, as the trustee, the right to withdraw the trust assets to **complete exhaustion**. The circumstances of this case are such that Gertrude, as the sole beneficiary, would have had to make a written request to herself, as the sole trustee. Requiring Gertrude to provide herself notice would be a vain act and unnecessary. Gertrude could not "unknow in the one capacity a fact already within [her] knowledge in the other." *Gerhold* at 346.

{¶19} This plain reading of the trust is harmonious with Thomas's intent when he created the trust. By allowing Gertrude to "pay * * * so much of the trust principal, even to its complete exhaustion, as [Gertrude] may request in writing [to herself]," Thomas

intended for Gertrude to have the discretion to withdraw the trust principal — regardless if the trust was exhausted in one withdrawal or one hundred withdrawals. This interpretation is further supported by the next provision, which states that Gertrude, as trustee, "shall also pay to, or for the benefit of, [herself] so much of the income and/or principal as is necessary, in [her] discretion, to provide liberally for her health, care, comfort and support." Tellingly, nowhere in the trust does it explicitly state that Gertrude could not completely exhaust the trust. Although any remaining principal was to be distributed to the contingent beneficiaries, Thomas clearly intended that Gertrude could withdraw the trust principal, "even to its complete exhaustion."

{¶20} Therefore, we conclude that the trial court did not err when it granted summary judgment in favor of Patti and Brian on plaintiffs' breach of fiduciary duty claim, finding that "Gertrude, as sole beneficiary, was not required to provide written notice to herself, as sole trustee, because such action would constitute a 'vain and unnecessary act.'"

{¶21} Accordingly, plaintiffs' first assignment of error and Patrick's first, third, fourth, fifth, and sixth assignments of error are overruled.

### Motions for Extension of Time and Protective Order

#### Plaintiffs' Second Assignment of Error

The trial court erred by denying plaintiff-appellants' motion pursuant to Rule 56(F) for extension of time to conduct discovery before responding to defendant's motion for summary judgment and by granting defendant-appellee's motion for a protective order.

{¶22} Patrick's Second Assignment of Error

The trial court erred by arbitrarily cutting off appellant's right to discovery, depositions, extension of time Civ.R. 56(F), tax records, and Patrick D. Scanlon's Civ.R. 37 for order to compel.

**{¶23}** In plaintiffs' second assignment of error and Patrick's second assignment of error, they argue the trial court abused its discretion when it denied their motion for an extension of time in order to conduct further discovery and granted Patti's motion for protective order.

**{¶24}** The trial court has wide discretion to grant or deny a request for a continuance pursuant to Civ.R. 56(F) and its decision will not be reversed absent an abuse of that discretion. *Ngoaka v. Soc. Natl. Bank*, 8th Dist. No. 57288 (July 19, 1990). Likewise, we review the trial court's decision to deny a motion for a protective order for an abuse of discretion. *Li v. Olympic Steel, Inc.*, 8th Dist. No, 97286, 2012-Ohio-603, ¶ 6, citing *Mauzy v. Kelly Servs., Inc.*, 75 Ohio St.3d 578, 592, 1996-Ohio-265, 664 N.E.2d 1272. An abuse of discretion "'implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 404 N.E.2d 144 (1980).

**{¶25}** In *Gates Mills Inv. Co. v. Pepper Pike*, 59 Ohio App.2d 155, 168-169, 392 N.E.2d 1316 (8th Dist.1978), we stated:

> Civ.R. 56 affords a party a mechanism whereby it can seek deferral of action on a motion for summary judgment so that it may obtain affidavits opposing the motion or conduct discovery relevant to it. Civ.R. 56(F). Civ.R. 56(F) requires the opposing party to submit affidavits with sufficient reasons stating why it cannot present by affidavit facts sufficient to justify

its opposition. Mere allegations requesting a continuance or deferral of action for the purpose of discovery are not sufficient reasons why a party cannot present affidavits in opposition to the motion for summary judgment. There must be a factual basis stated and reasons given why it cannot present facts essential to its opposition to the motion. If this is done, the trial court has several alternatives. It may refuse the application for summary judgment; it may order a continuance to permit affidavits to be obtained in opposition to the motion for summary judgment; it may grant a continuance for further discovery; or it may make such other order as is just. These are all within the trial court's discretion and are not mandatory. Civ.R. 56(F).

{¶26} In the instant case, plaintiffs sought an extension of time before responding to Patti's motion for summary judgment. They argued that because a number of fact issues exist concerning Gertrude's administration of the trust, they should have the opportunity to conduct further discovery, including the depositions of Patti and Brian. In support of their motion, plaintiffs attached an affidavit by one of their attorneys, David Lenz ("Lenz"). In the affidavit, Lenz states that plaintiffs require further discovery to examine in what capacity Gertrude made the withdrawals from the trust and whether Gertrude complied with her duties as trustee. Lenz further stated, "[t]o complete discovery on these issues, Plaintiffs need to take the depositions of * * * Patti Scanlon [and] * * * Brian Scanlon."

{¶27} In response, Patti argued that plaintiffs' motion should be denied because the facts are not in dispute. Rather, the sole legal issue in the case is whether Gertrude was required to perform the "vain and unnecessary act" of writing by herself as beneficiary to herself as trustee. As a result, Patti argued that additional factual discovery would not alter this issue and would serve no other purpose than to delay and waste the parties' resources. Patti then filed a motion for protective order under Civ.R.

26(C), requesting that plaintiffs be precluded from taking her deposition until the trial court rules on plaintiffs' motion for extension under Civ.R. 56(F) and her motion for summary judgment. In her motion, Patti states that a deposition "will only serve to annoy, embarrass, oppress and subject Defendants to undue burden and expense." Plaintiffs opposed, and the trial court granted, Patti's motion for a protective order. The trial court also denied plaintiffs' motion for extension of time to conduct discovery because the court stayed discovery until it ruled on Patti's motion for summary judgment.

{¶28} As stated above, a motion under Civ.R. 56(F) must set forth the reasons justifying delay. Here, plaintiffs' motion failed to do so. Their motion for extension asserted that the additional time was required to examine in what capacity Gertrude made the withdrawals from the trust and whether Gertrude complied with her duties as trustee. This basis does not justify a delay since the issue is whether Gertrude breached a fiduciary duty to herself by not giving herself a request in writing before distributing the trust principal to herself. The requested additional discovery would not have addressed this issue. Therefore, the trial court did not abuse its discretion by denying plaintiffs' motion for extension under Civ.R. 56(F).

{¶29} For these same reasons, the trial court did not abuse its discretion when it granted Patti's motion for protective order under Civ.R. 26(C), precluding plaintiffs from taking Patti's deposition until the trial court ruled on Patti's motion for summary.[4]

---

[4]Civ.R. 26(C) provides in part: "[u]pon motion by any party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending may make any order that justice requires to protect a party or

**{¶30}** Therefore, plaintiffs' second assignment of error and Patrick's second assignment of error are overruled.

**{¶31}** Judgment affirmed.

It is ordered that appellees recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

MARY EILEEN KILBANE, JUDGE

MARY J. BOYLE, J., CONCURS;
MELODY J. STEWART, A.J., DISSENTS (SEE SEPARATE DISSENTING OPINION)

MELODY J. STEWART, A.J., DISSENTING:

**{¶32}** The appellees are not entitled to judgment as a matter of law in this case. I believe the finding that the trust's writing requirement would constitute a "vain and unnecessary act" is incorrect. Furthermore, when read in context to the entire trust, the terms of the trust allowing for the withdrawal of principal did not permit Gertrude to deplete and terminate the trust as she did. Finally, conspicuously absent from the trial

---

person from annoyance, embarrassment, oppression, or undue burden or expense[.]"

court's analysis and the majority opinion is any discussion of the donor's intent when creating the trust. I believe that, crucial to deciding this case, is determining the intent of the donor when creating the trust.

{¶33} As the majority notes, when Thomas established the Family Trust, he was the sole donor and sole trustee. He was also initially the sole beneficiary. Gertrude was the successor trustee and beneficiary after Thomas's death, and certain family members were designated beneficiaries and trustees upon Gertrude's death. Simultaneous to the creation of the trust, Gertrude executed a Last Will and Testament that named Thomas as her primary beneficiary for certain personal items; named her son Richard Zdybalski as a secondary beneficiary for an automobile and household items in the event of Thomas's death; and provided that the remainder of her real and personal property be added to the Family Trust created by Thomas.

{¶34} Also noted, section six of the trust provides that the trustee shall pay income from the trust estate to Thomas's wife on at least a quarterly basis, and pay her "so much of the principal, even to its complete exhaustion, as she may request in writing * * *." Following this sentence, the paragraph further provides that "[t]he Trustee shall also pay to, or for the benefit of, my wife so much of the income and/or principal as is necessary, in the Trustee's discretion, to provide liberally for her health, care, comfort and support."

{¶35} The trial court found, and the majority affirms, that Gertrude did not have to abide by the requirement that she make a written request to have any of the trust principal paid to her because she was the sole beneficiary and sole trustee. Citing case law setting

forth the premise that Ohio law "does not require the performance of a vain act," and relying primarily on *In re Estate of Schafer*, 2d Dist. No. 2005 CA 45, 2006-Ohio-6126, the majority reasons that requiring Gertrude to abide by the specific terms of the trust would be vain and unnecessary due to the fact that she was the sole beneficiary and sole trustee. This finding, however, is not sound for the following reasons.

{¶36} First, reliance on *Schafer* to support the majority's decision is misplaced. The quote from the probate court regarding the performance of a vain and unnecessary act is dicta from the Second District Court of Appeals and was not dispositive of the issue in *Schafer*. Also, as noted by the appellants, unlike the writing requirement in the Scanlon trust, the trust in *Schafer* did not require the beneficiary to make a written request to the trustee for withdrawals of principal. Thus *Schafer* does no more than tie the "vain and unnecessary act" language to a case involving a trust.

{¶37} Next, a trust's meaning, like that of a contract, is derived from the words themselves. To state that the writing requirement of the trust, as applied to Gertrude, would constitute a vain and unnecessary act wholly disregards the express requirements of the Family Trust.[5] Additionally, to find that the writing requirement is a vain act, or simply should not apply to Gertrude because she was the sole beneficiary and sole trustee

---

[5]It is questionable how the analysis of the writing requirement would differ if the trustee were a third person. For instance, if Gertrude made a verbal request of a third person trustee that all the principal of the trust be withdrawn and paid to her, does the trustee breach his or her fiduciary duty by complying with the verbal request? If Gertrude was permitted to access the principal, and the trustee understood that she was so permitted, it begs the question of whether requiring a written request would constitute a "vain and unnecessary act" under this scenario.

when the moneys were withdrawn, assumes that her dual status was not considered when the trust was created by Thomas (an unlikely scenario) or, that making the written request could not possibly be required of Gertrude under the circumstances of her dual roles. However, when the writing requirement is read in context to the entire trust, other provisions of the trust declaration belie this assumption.

{¶38} Thomas must have contemplated the fact that both he and Gertrude would at some point have dual roles in relation to the trust, yet required written request for payment of principal.   For example, section four of the trust required Thomas to request in writing from the trustee, payments of principal from the trust.   Again, at the time the trust was created, Thomas was both the sole beneficiary and the sole trustee.   So this provision, like the one at issue with Gertrude, required Thomas, as beneficiary, to make written requests of himself, as trustee, for any payment of trust principal.   It thus seems clear that Thomas intended for there to be regular and automatic payments of trust income to the current beneficiary (Thomas or Gertrude), but that payment of trust principal would have to be initiated by written requests.

{¶39} Other provisions in the Declaration of Trust support this interpretation. For instance, in the paragraph at issue, no writing is required of Gertrude to be paid "so much of the income and/or principal as is necessary, in the Trustee's discretion, to provide liberally for her health, care, comfort and support."   Also, in section four of the trust, no written request to a *Successor Trustee* was required for payment of principal to, or for, Thomas's benefit had he become incapacitated.   If Thomas, as donor, sole

beneficiary, and sole trustee, clearly required a written request to himself for the payment of trust principal, it cannot be said that requiring Gertrude to do the same constitutes a vain act.

**{¶40}** In section five of the Declaration, Thomas instructs that after his death, "the Trustee shall pay to the Executor or Administrator of my estate, * * * *upon the written request of such personal representative*, such amounts of the trust principal held at my death as my Executor or Administrator deems necessary or advisable * * *." (Emphasis added.) With Gertrude becoming the trustee after Thomas died, if she was also the executor or administrator of Thomas's estate, this provision likewise requires that she make a written request of herself for a payment from the trust's principal. What these provisions clearly demonstrate is, although the donor and/or beneficiary and/or trustee of a trust are often the same person, the law of trusts still treats them as separate entities.

**{¶41}** Finally, I believe that determining Thomas's intent when he created the Family Trust is paramount to deciding this case.

**{¶42}** There are several legal theories or approaches that can be employed when interpreting trusts. *See generally* Strong, *Arbitration of Trust Disputes: Two Bodies of Law Collide*, 45 Vand.J.Transnatl.L. 1157 (2012). The more common approaches include donative, contractual, or intention theories of trust law. *Id.* at 1174-1181. Ohio appears to have adopted the intention theory of trusts. *See Pack v. Osborn*, 117 Ohio St.3d 14, 16, 2008-Ohio-90, 881 N.E.2d 237; *Domo v. McCarthy*, 66 Ohio St.3d 312, 612

N.E.2d 706 (1993), paragraph one of the syllabus (a court's primary responsibility when reviewing a trust is to ascertain the intent of the settlor/donor). Under this approach, balancing the rights and requirements at issue in a trust dispute should be resolved in favor of upholding the donor's intent when creating the trust since the donor's "right to dispose of [his] property as [he] sees fit is indisputably superior to the right of [a] * * * beneficiary * * * to receive the [donor's] property." *Strong* at 1180-1181, quoting Spitko, *Gone But Not Conforming: Protecting the Abhorrent Testator from Majoritarian Culture Norms Through Minority-Culture Arbitration*, 49 Case W.Res.L.Rev. 275, 299 (1999).

{¶43} The appellees assert that Gertrude's ability to access the trust's principal is "undisputed" and that if "Thomas had intended to limit [her] ability to withdraw principal, he could have done so," but did not. They argue that Thomas's intentions are clear in the trust: that he wanted to provide for his wife of many years. Appellants state that Thomas Scanlon's intentions when creating the Family Trust were to provide for himself and his wife during their lifetimes, and to distribute any funds that remained after their deaths to specific family members. These perspectives are not incongruous. However, the question that remains is whether it was Thomas's intent, by conferring liberal access to trust principal, that Gertrude be able to deplete the trust of its entire assets shortly after his death. A complete reading of the Declaration of Trust answers this question in the negative.

{¶44} It is axiomatic that a trust must be examined as a whole to determine the

donor's intent. *Saunders v. Mortensen*, 101 Ohio St.3d 86, 2004-Ohio-24, 801 N.E.2d 452, ¶ 16. Reading the trust document in its entirety, I find that the provision to pay Gertrude "the net income of the trust estate * * * at least on a quarterly basis, and so much of the principal, even to its complete exhaustion, as she may request in writing" can only be read to authorize Gertrude to request and withdraw amounts from the principal of the trust for her use, such that she would not be financially limited by the trust income. And although she could make and receive such payments even to the trust's exhaustion, the provision clearly does not contemplate annihilating the trust property in one fell swoop: in essence, terminating the trust. This interpretation is supported by the language that follows the provision in question where the trust provides, "[t]he Trustee shall also pay to * * * my wife so much of the income and/or principal as is necessary, in the Trustee's discretion, to provide liberally for her health, care, comfort and support." Furthermore, the next paragraph of this section describes the means by which the remaining principal of the trust is to be distributed upon Gertrude's death. Nowhere in this paragraph does it contemplate the possibility that Gertrude would, or could, terminate the trust and thwart the distribution of the funds that remained after Gertrude's death. The trust goes further for two more sections to outline the mechanism for distributing the remaining principal of the trust in the event of the death of any of the contingent beneficiaries. It defies logic that Thomas would have so painstakingly made detailed provisions for how the trust should be administered, and not clearly provide that Gertrude could terminate the trust by depleting the trust property.

{¶45} There are other examples in the Declaration that lend support to the proposition that, although Thomas intended to provide liberally for Gertrude, such provisions were not without restrictions and did not contemplate a complete distribution of the trust property to Gertrude. Outlining the powers of the trustee, section 3 of the Declaration provides: "The Trustee and any Successor Trustee * * * shall serve without bond, and in addition to those powers granted by law, *and until actual distribution of the trust property*, shall have the following rights, powers, duties, and immunities * * *." (Emphasis added.) It is important to note that nowhere in the Declaration of trust is there a provision that allows for the distribution of the trust property to Gertrude: only to the contingent beneficiaries upon Gertrude's passing. I understand that at the heart of this case is the issue of whether the provision allowing Gertrude to make withdrawals of trust principal is akin to allowing her to distribute the entire trust amount to herself. But the Declaration of Trust makes clear that the two are not one in the same. This stands to reason. If Thomas wanted Gertrude to have the entire trust property, not only could he have specifically provided so in the Declaration of Trust, he also could have left everything to her in a will or simply given her everything outright as a gift. Therefore, her ability to liberally access the principal of the trust did not go hand in hand with completely distributing the trust property to herself.

{¶46} Finally, section 14 of the Declaration, sets forth the rights that Thomas reserved to himself and those he granted to others. Of note is the fact that Thomas granted only to himself the right "at any time to revoke [the] Declaration of Trust, in

whole or in part, and to withdraw trust property without the approval of any person" (subject to a trustee's lien for fees, liabilities, etc.). This provision makes clear that Thomas was the only person who had the right to terminate the trust. The appellees' position in this case merely argues that Gertrude was allowed to do indirectly that which she was not directly permitted to do. The court should not condone this backdoor effort.

{¶47} Section one of the Declaration of Trust provides in pertinent part: "I hereby agree, and each Successor Trustee shall thereupon agree, *to administer in trust under this Declaration of Trust * * *.*" (Emphasis added.) This statement required Thomas and all successor trustees, including Gertrude, to act within the confines of the trust declaration. When the Declaration is read in its entirety and interpreted as a whole, it establishes that Thomas's clear intent in creating the trust was to liberally provide for his wife during her lifetime, even if that meant spending the entire principal of the trust, with any funds remaining after Gertrude's death to be distributed to the family members designated in the trust declaration. Gertrude did not "administer in trust under [the] Declaration of Trust." She did not act consistent with the intent of the trust. Only two months after Thomas's death, Gertrude withdrew all the funds from the trust accounts, distributing the entire trust property to herself. There is no provision in the Declaration of Trust that allows for the depletion of the trust's property, thus terminating the trust, neither is there any reasonable interpretation of the Declaration that would allow such distribution when the document is read as a whole. To be sure, Gertrude was entitled to request and receive payments of principal whenever she wanted. And had she fully

exhausted the trust principal and used it in a way that no money from the trust remained after her death, appellants would be hard pressed to state a viable claim. This was not the case, however.

{¶48} Thomas was the sole donor of the trust res: not Gertrude and Thomas. He specifically set forth how the funds in the trust were to be allocated. Appellants surmise that there remains several hundred thousand dollars of the money Gertrude withdrew from the trust. In light of Thomas's intent to provide liberally for Gertrude during her lifetime and distribute all moneys that remained after Gertrude's death to members of his family, I cannot conclude that the appellees in this case are entitled to judgment as a matter of law. I would therefore reverse this case and remand it to the trial court for further proceedings.