[Cite as *State ex rel. Cuyahoga Cty. v. Jones Lang LaSalle Great Lakes Corporate Real Estate Partners, L.L.C.*, 2017-Ohio-4066.]

IN THE COURT OF APPEALS OF OHIO
EIGHTH APPELLATE DISTRICT
CUYAHOGA COUNTY

| | |
|---|---|
| State ex rel. County of Cuyahoga | Court of Appeals No. CA-16-104157 |
| Appellant | Trial Court No. CV-14-827651 |
| v. | |
| Jones Lang LaSalle Great Lakes Corporate Real Estate Partners LLC, et al. | **DECISION AND JUDGMENT** |
| Appellees | Decided: June 1, 2017 |

* * * * *

Robert J. Triozzi, Director, Cuyahoga County Department of Law,
Robin M. Wilson and Joseph W. Boatwright, IV, Assistant Directors
of Law, for appellant.

James R. Wooley, Justin E. Herdman, Michael S. Quinlan and
Stephen G. Sozio, for appellee Jones Lang LaSalle Great Lakes Corporate
Real Estate Partners.

Ross M. Babbitt, for appellees Midwestern Entertainment Venture, LLC
and its d/b/a Anatomy Nightclub.

Richard T. Hamilton, Jr., for appellees Harvey G. Oppmann and
944 Prospect Avenue LLC.

John J. Spellacy, for appellee M2J1, LLC.

Roger M. Synenberg, Dominic J. Coletta and Clare C. Moran, for
Appellees Vincent A. Russo, Vincore, LLC and Garibaldi Holdings.

**PIETRYKOWSKI, J.**

{¶ 1} Appellant, Cuyahoga County ("the County"), appeals the judgment of the Cuyahoga County Court of Common Pleas, dismissing its complaint. For the reasons that follow, we affirm.

## I. Facts and Procedural Background

{¶ 2} The facts in this matter are taken from the County's complaint, filed on May 30, 2014, which asserted 13 counts against ten different defendants stemming from fraudulent and corrupt dealings regarding two separate but related transactions.

{¶ 3} The first transaction concerned the County's purchase of the Ameritrust building site.

{¶ 4} In its complaint, the County alleged that Great Lakes[1] desired to provide real estate services for the County but had been unsuccessful in getting the business. In January 2003, Great Lakes hired Anthony Calabrese, III, and his law firm to represent it. Shortly thereafter, Calabrese began arranging meetings between Great Lakes and County officials.

{¶ 5} In November 2003, the County issued a request for proposal for real estate services related to the consolidation of the County's agencies into one building or campus. Great Lakes submitted a proposal, which indicated that its fee would range

---

[1] "Great Lakes" refers to appellees Jones Lang LaSalle Great Lakes Corporate Real Estate Partners, LLC, and Jones Lang LaSalle, Inc.

between two and four percent of the gross aggregate value of the lease if the County leased the property, or between $5 and $7 per square foot of the gross building area if the County purchased the property. In April 2004, Great Lakes was selected as one of five finalists. The other four finalists proposed a fixed fee of between $300,000 and $400,000 for consulting and strategic planning services on Phases I and II of the project. In July 2004, Great Lakes clarified its proposal such that it would be paid a lump sum of $396,000 for the services provided on Phases I and II, with that amount to be credited back to the County once the County entered into a lease or purchase agreement under Phase III. As to Phase III, Great Lakes proposed that it receive a fee of $5.85 per gross building square foot regardless of whether the County leased or purchased the building.

{¶ 6} While the County was going through the selection process, Great Lakes hired Vincore, LLC, to provide "certain government relations and similar consulting services." Great Lakes paid Vincore, LLC, $2,000 in June 2004 and $2,000 in July 2004. Great Lakes and Calabrese had additional meetings with County officials during this time.

{¶ 7} In September 2004, Great Lakes' proposal was selected, and Calabrese began negotiating the contract between Great Lakes and the County (the "Cuyahoga County Contract"). The Cuyahoga County Contract was not signed until October 5, 2004.

{¶ 8} On October 1, 2004, Great Lakes entered into a contract with Garibaldi Holdings pursuant to which Garibaldi Holdings would provide government relations

3.

work relative to the Cuyahoga County Contract in exchange for $150,000. On November 1, 2004, Great Lakes entered into another agreement with Garibaldi Holdings, this time agreeing to pay $140,000 for governmental and marketing services in "regard to assisting, advising and counseling [Great Lakes] in regard to any of its contracts with Cuyahoga County, Ohio."

{¶ 9} Similarly, on October 1, 2004, Great Lakes entered into a contract with the R.P. Carbone Company ("R.P. Carbone") pursuant to which R.P. Carbone would provide government relations work relative to the Cuyahoga County Contract in exchange for a percentage of the amount made by Great Lakes. Vincent Carbone is alleged to be the president of R.P. Carbone. On November 1, 2004, Great Lakes entered into a second contract with R.P. Carbone, agreeing to pay it $30,000 for its time and services in relation to Phase I and II of the Cuyahoga County Contract.

{¶ 10} By November 19, 2004, Great Lakes had completed the initial phase of the work under the Cuyahoga County Contract, and presented its results to the County. In the report, Great Lakes ranked the Ameritrust property as the fourth best option as a potential location for the consolidated county offices.

{¶ 11} On January 21, 2005, Great Lakes, Calabrese, and Cuyahoga County Commissioner Jimmy Dimora met at a Holiday Inn on Rockside Road. On January 25, 2005, Great Lakes reported that it had completed Phases I and II, and recommended that the County proceed with the Ameritrust site.

4.

{¶ 12} On March 31, 2005, Great Lakes sought the county commissioners' approval to move into Phase III of the Cuyahoga County Contract. Great Lakes never received such approval. Instead, the County and Great Lakes executed a second contract ("Cease Work Contract"), under which Great Lakes would cease work under the Cuyahoga County Contract. The parties agreed that Great Lakes would be entitled to keep the $385,000 retainer, and that Great Lakes would receive an additional $2,615,000. The County paid Great Lakes upon the County's purchase of the Ameritrust site as required by the Cease Work Contract.

{¶ 13} In October 2005, Vincent Carbone formed M2J1, LLC ("M2J1"). Great Lakes was requested to pay, and did pay, its obligation to R.P. Carbone for a percentage of the money made by Great Lakes on the Cuyahoga County Contract to M2J1. This amount totaled $324,800. From that amount, M2J1 made three distributions: it distributed $99,000 to Burlwood Holdings, LLC, an entity owned by Calabrese; it distributed $70,000 to a Calabrese friend; and it indirectly distributed $70,000 to J. Kevin Kelley, an employee in the Cuyahoga County Treasurer's Office and a member of Dimora's inner circle.

{¶ 14} The County alleged that Great Lakes has no records of what services Garibaldi Holdings or R.P. Carbone provided under the agreements. Further, the amounts paid to Garibaldi Holdings and R.P. Carbone were charged as a cost to the Cuyahoga County Contract. Vincent Russo, the owner of Vincore, LLC and Garibaldi Holdings, was later indicted and pled guilty to bribery, aiding and abetting, conspiracy to

5.

commit bribery, and HOBBS Act conspiracy charges related to federal funds. Vincent Carbone was indicted and pled guilty to conspiracy and money laundering related to bribery to gain governmental contracts. Great Lakes, Vincore, LLC, Garibaldi Holdings, and R.P. Carbone were all represented by Calabrese.

{¶ 15} On July 16, 2013, Calabrese was indicted based on his actions relative to the Ameritrust site and the $99,000 payment from Great Lakes through M2J1. Calabrese pled guilty to federal charges, including multiple counts of RICO conspiracy, bribery and conspiracy to commit bribery concerning programs receiving federal funds, Hobbs Act conspiracy, mail fraud, and conspiracy to commit mail fraud. As part of his plea, Calabrese admitted that the payment to J. Kevin Kelley was an unlawful bribe related to the Ameritrust project. Notably, the County alleged that it did not become aware of the fraud and corruption until Calabrese was indicted.

{¶ 16} In its complaint, the County alleged that Great Lakes hired Vincore LLC, Garibaldi Holdings, Vincent Carbone, and Calabrese because it knew they could influence the decision makers in Cuyahoga County. Further, the County alleged that Great Lakes paid those entities and individuals an inflated amount of money because Great Lakes knew that they needed that money to give to public officials to influence them in Great Lakes' favor. Great Lakes benefitted from those corrupt activities by being selected for the Ameritrust project and being paid $3,000,000 for work worth substantially less. The County alleged that, but for the corruption in its dealings with the County, Great Lakes would not have been selected for the project and would have been

6.

paid less, and the County would not have selected the Ameritrust site, which cost the County millions of extra dollars. Based on these allegations, the County asserted the following counts:

{¶ 17} Against Great Lakes:

- Violation of R.C. 309.12 (Count 1)

- Breach of Contract (Count 2)

- Unjust Enrichment (Count 3)

- Fraud (Count 4)

- Breach of Fiduciary Duty (Count 5)

- Fraud in the Inducement (Count 6)

- Declaratory Judgment (Count 7)

- Violation of the Ohio Corrupt Practices Act (Count 9)

- Civil Conspiracy (Count 10)

- Civil Liability for Criminal Acts (Count 13)

{¶ 18} Against Vincent A. Russo, Vincore, LLC, and Garibaldi Holdings (collectively the "Russo" appellees):[2]

- Violation of R.C. 309.12 (Count 1)

- Unjust Enrichment (Count 3)

- Violation of the Ohio Corrupt Practices Act (Count 9)

---

[2] Russo is alleged to be a member and manager of both Vincore, LLC, and Garibaldi Holdings.

7.

- Civil Conspiracy (Count 10)

- Civil Liability for Criminal Acts (Count 13)

**{¶ 19}** Against M2J1:

- Violation of R.C. 309.12 (Count 1)

- Unjust Enrichment (Count 3)

- Violation of the Ohio Corrupt Practices Act (Count 9)

- Civil Conspiracy (Count 10)

- Civil Liability for Criminal Acts (Count 13)

**{¶ 20}** The second transaction giving rise to the complaint involved the purchase of a parking garage near the Ameritrust site. The parking garage was owned by 944 Prospect Avenue, LLC, of which Harvey G. Oppmann was allegedly a member and manager. The County alleged that Oppmann was aware that Steven Pumper was part of Dimora's inner circle. Oppmann contacted Pumper and told him that he wanted to sell the parking garage but the County was dragging its feet. Oppmann orally agreed to pay Pumper $250,000 from the proceeds if Pumper got the County to close the sale. Pumper contacted Dimora on behalf of Oppmann, and offered to pay Dimora $35,000 to get the deal moving. The sale of the parking garage was completed on May 29, 2007, for $5,145,000, which was higher than the County's appraised value of the property.

**{¶ 21}** After the sale of the parking garage, Pumper requested that Oppmann pay him by distributing part of the money in three different ways. One distribution went to

8.

Pumper's father, who generated a false invoice for $50,000 for government relations work. Another distribution went to DAS Construction Company—where Pumper worked—which did not provide any services for the payment. The final distribution went to Midwest Entertainment Venture, LLC ("MEV"), which operated Anatomy Nightclub. Pumper is alleged to be a silent partner in Anatomy Nightclub. The distribution to MEV was passed along to Anatomy Nightclub in exchange for a promissory note, which the County alleged was fake and an attempt to hide the payments to Pumper for his role in the corruption scheme.

{¶ 22} The County alleged that as a result of the bribes paid to Pumper and others, it paid more for the parking garage than it should have. Based on these allegations, the County asserted the following counts:

{¶ 23} Against Harvey G. Oppmann and 944 Prospect Avenue, LLC (collectively the "Oppmann" appellees):

- Violation of R.C. 309.12 (Count 1)

- Unjust Enrichment (Count 3)

- Fraud (Count 8)

- Violation of the Ohio Corrupt Practices Act (Count 11)

- Civil Conspiracy (Count 12)

- Civil Liability for Criminal Acts (Count 13)

9.

{¶ 24} Against Midwest Entertainment Venture, LLC, and Anatomy Nightclub (collectively the "MEV" appellees):[3]

- Violation of R.C. 309.12 (Count 1)

- Unjust Enrichment (Count 3)

- Violation of the Ohio Corrupt Practices Act (Count 11)

- Civil Conspiracy (Count 12)

- Civil Liability for Criminal Acts (Count 13)

{¶ 25} In response to the complaint, the various groups of appellees filed Civ.R. 12(B)(6) motions to dismiss.

{¶ 26} On July 3, 2014, Great Lakes moved to dismiss the claims against it on the grounds that they (1) were barred by a contractual release contained in the Cease Work Contract, (2) were not sufficiently pled under Civ.R. 8(A) and 9(B), and (3) were outside of the statute of limitations because the County knew of, or reasonably should have discovered, the claims as early as July 29, 2008, when an article in the Cleveland Plain Dealer reported that a search warrant was executed upon Dimora, seeking in part, "For any time period, documents reflecting James 'Jimmy' Dimora's deliberative process, discussions, analysis or actions regarding the following:  * * * 2. Ameritrust project (Cuyahoga County Administration Building)."  Attached to Great Lakes' motion to dismiss were a copy of the Cease Work Contract and a copy of the online article from the Cleveland Plain Dealer, with an attached link to a copy of the search warrant.

---

[3] Anatomy Nightclub is alleged to be a "dba" of Midwest Entertainment Venture, LLC.

**{¶ 27}** The Russo appellees moved to dismiss the complaint on the grounds that the claims (1) were not sufficiently pled under Civ.R. 8(A) and 9(B), and (2) were barred by the statute of limitations. In its motion, the Russo appellees also sought to adopt the corresponding arguments raised by Great Lakes.

**{¶ 28}** Likewise, M2J1 moved to dismiss the complaint on the grounds that the claims (1) were not sufficiently pled under Civ.R. 8(A) and 9(B), and (2) were barred by the statute of limitations. M2J1 sought to incorporate the arguments made by Great Lakes and the Russo appellees.

**{¶ 29}** Like the other defendants, the Oppmann appellees moved to dismiss the complaint on the grounds that the claims (1) were not sufficiently pled under Civ.R. 8(A) and 9(B), and (2) were barred by the statute of limitations. As to the statute of limitations argument, the Oppmann appellees reasoned that the County's alleged discovery date of July 16, 2013, corresponding to Calabrese's indictment, was inapplicable to them because Calabrese did not represent the Oppmann appellees and had no involvement in the transaction. Thus, the Oppmann appellees concluded that the only applicable date for purposes of the statute of limitations that was alleged in the complaint was the date of the sale of the parking garage on May 29, 2007, which would result in the County's claims being time-barred.

**{¶ 30}** Finally, the MEV appellees moved to dismiss the complaint, arguing that the County has not alleged any facts that would subject them to liability. In addition, the MEV appellees joined in the arguments made by Great Lakes and the Oppmann appellees

11.

relative to the statute of limitations and the sufficiency of the pleading under Civ.R. 8(A) and 9(B).

{¶ 31} The County filed responses to each of the motions to dismiss, and each group of appellees filed replies.

{¶ 32} On May 26, 2015, the judges of the Cuyahoga County Court of Common Pleas were recused, and the Ohio Supreme Court assigned the case to a visiting judge. In a pretrial conference held on August 18, 2015, the trial court notified the parties that it would be converting all of the motions to dismiss into motions for summary judgment since they referenced matters outside of the complaint. The court stated in its corresponding October 1, 2015 order that all of the appellees were required to refile their motions as motions for summary judgment "in order for the Court to consider the merits of the Defendants' claims."

{¶ 33} In accordance with the trial court's order, the parties filed the motions described below.

{¶ 34} In Great Lakes' motion for summary judgment, Great Lakes limited its argument to whether the claims were barred by the contractual release contained in the Cease Work Contract. However, Great Lakes indicated that it was reserving its right to assert any counterclaims or affirmative defenses, including the defenses of statute of limitations, estoppel, unclean hands, release, and laches. Further, Great Lakes asserted that counsel for the County agreed that the County would not argue that the motion for summary judgment waived any of Great Lakes' affirmative defenses or counterclaims.

12.

Attached to Great Lakes' motion for summary judgment was an affidavit from Robert Roe, a managing director of Great Lakes. Roe stated that under the Cuyahoga County Contract, Great Lakes was entitled to fees totaling $4,400,000. He testified that Great Lakes performed a substantial amount of services for the County, but that the County wished to terminate the Cuyahoga County Contract. As a result, the parties entered into the Cease Work Contract under which Great Lakes agreed to accept the reduced fee of $2,615,000 plus the initial $385,000, and would forgo payment of the remaining $1,400,000. A copy of the Cease Work Contract was included as an exhibit to Roe's affidavit.

{¶ 35} The County filed a response to Great Lakes' motion for summary judgment, in which it argued that the release contained in the Cease Work Contract does not bar the present claims. Alternatively, the County moved pursuant to Civ.R. 56(F) for additional time to conduct discovery before responding to the motion for summary judgment.

{¶ 36} The Russo appellees, on the other hand, filed a motion notifying the court that they were withdrawing their arguments relative to the statute of limitations, and were requesting that the court rule on their motion to dismiss as it pertains to the sufficiency of the pleading pursuant to Civ.R. 8(A) and 9(B). The Russo appellees noted that they were reserving their rights to raise the issue of the statute of limitations once discovery was completed. The County did not respond to the Russo appellees' motion.

13.

{¶ 37} M2J1 filed a motion for summary judgment asserting that the statute of limitations barred the County's claims. Attached to M2J1's motion were copies of two articles from the Cleveland Plain Dealer regarding the Ameritrust bribery and corruption scandal, as well as the linked Dimora search warrant.

{¶ 38} Initially, the County moved to strike M2J1's motion for summary judgment because it was not timely filed. Alternatively, the County opposed M2J1's motion for summary judgment, asserting that the claims were not barred by the statute of limitations. Further, the County moved to strike the exhibits attached to M2J1's motion for summary judgment because they were not authenticated by an affidavit.

{¶ 39} The Oppmann appellees' motion for summary judgment raised the issue of the statute of limitations, and argued that the claims were barred because the County was on notice as of July 28, 2008, of possible fraudulent conduct and wrongdoing. Attached to the Oppmann appellees' motion for summary judgment was an affidavit from the Oppmann appellees' counsel stating that he discovered several news articles pertaining to the allegations of fraud concerning the Ameritrust site by simply using the search term "Dimora Search Warrant." Those articles were incorporated as exhibits to his affidavit, and included the July 29, 2008 article from the Cleveland Plain Dealer containing the link to the Dimora search warrant. Also attached to the motion for summary judgment was an affidavit from Barbara Allen, the office manager for the Oppmann appellees. Allen testified as to the circumstances surrounding the sale of the parking garage, and authenticated several documents related to such sale.

14.

{¶ 40} The County filed its opposition to the Oppmann appellees' motion for summary judgment. In addition, the County moved to strike the affidavits attached to the motion for summary judgment on the grounds that the affidavits were not made on personal knowledge. The Oppmann appellees opposed the motion to strike, and the County filed a reply in support of its motion.

{¶ 41} Finally, the MEV appellees renewed their motion to dismiss, noting that it did not require reference to any outside materials. As with their previous motion, the MEV appellees argued that the County had not alleged any facts that would subject them to liability.

{¶ 42} The County opposed the MEV appellees' motion to dismiss, arguing that the complaint was sufficient to state claims against the MEV appellees.

{¶ 43} On January 26, 2016, the trial court entered its judgment upon all of the motions. The court began with the Oppmann appellees' motion for summary judgment and the County's motion to strike the attached affidavits. Regarding the motion to strike, the trial court found that Allen's affidavit satisfied the personal knowledge requirement by virtue of her position as the records custodian for the Oppmann appellees, as well as her statement that she has personal knowledge of the Oppmann appellees' business records. Thus, the trial court overruled the County's motion to strike Allen's affidavit. As to the affidavit from the Oppmann appellees' counsel, the trial court found that it was made on personal knowledge. Further, the court found that the two articles from the Cleveland Plain Dealer were self-authenticating under Evid.R. 902(6), and noted that the

Oppmann appellees were not admitting them to prove the truth of the matter asserted in the article, but rather to show that newspaper outlets were reporting on the existence and execution of the search warrant and its targeting of the Ameritrust project. However, the court found that the other three articles[4] were not self-authenticating under Evid.R. 902(6), and therefore struck them.

{¶ 44} Turning to the merits of the Oppmann appellees' motion for summary judgment, the trial court found that the County's claims against the Oppmann appellees were barred by the statute of limitations. The court found that there was no genuine issue of material fact that the "discovery rule" for claims related to the Ameritrust project was triggered on July 29, 2008, with the publication of the Cleveland Plain Dealer article that referenced the execution of the search warrant for Dimora's records. Further, the court noted that when faced with a properly supported motion for summary judgment, the County did not meet its reciprocal burden to demonstrate a genuine issue of material fact, but instead merely relied upon the allegations in its complaint.

{¶ 45} The court then applied the discovery date of July 29, 2008, to determine that the claims for fraud (Count 8), violation of the Ohio Corrupt Practices Act (Count 11), and civil conspiracy (Count 12) were barred by the statute of limitations.

---

[4] *Jones expects Dimora to resume county work*, Crain's Business (July 29, 2008); *Dimora search warrant:  What the FBI/IRS were looking for*, WKYC.com (July 30, 2008); and *FBI executing search warrants in public corruption investigation*, WTAM 1100 AM (July 28, 2008).

16.

**{¶ 46}** Regarding the claim for unjust enrichment (Count 3), the court found that the sale of the parking garage was governed by an express written contract, which therefore precluded the County's unjust enrichment claim as a matter of law. Alternatively, the court found that the benefit to the Oppmann appellees was conferred on May 29, 2007, when the contract was executed, and the discovery rule does not apply to unjust enrichment claims. Thus, the County's complaint that was filed on May 30, 2014, was beyond the six-year statute of limitations.

**{¶ 47}** Regarding the claim for liability for criminal acts under R.C. 2307.60 (Count 13), the trial court found that R.C. 2307.60 does not create a cognizable civil cause of action. Alternatively, the court found that the complaint failed to state a claim upon which relief could be granted pursuant to Civ.R. 12(B)(6) because the complaint merely listed different criminal acts by citation only (R.C. 2921.02 [Bribery]; R.C. 2921.03[Intimidation]; R.C. 1315.55 [Money Laundering]; R.C. 2923.31(I)(1) [Racketeering]; and R.C. 2921.32 [Obstructing Justice]), and failed to set forth elements to put the Oppmann appellees on notice as required by law. Finally, the court found that even if a cause of action existed under R.C. 2307.60, the claim is barred by a one-year statute of limitations.

**{¶ 48}** Lastly, regarding the claim for violation of R.C. 309.12 for the protection of public funds (Count 1), the court noted that R.C. 309.12 does not have a statute of limitations. However, finding that the complaint sounded in fraud, the trial court applied the four-year statute of limitations for fraud claims and found that the claim was

time-barred. Alternatively, the trial court found that the doctrine of laches applied to bar the claim because the County waited an unreasonable amount of time after the discovery of the public corruption associated with the Ameritrust project to bring the claim. As an additional alternative, the trial court found that the Cuyahoga County Department of Law lacked standing to prosecute the claim because under R.C. 309.12 only the "prosecuting attorney" may bring a civil action for damages in the name of the county. Although the County asserted in its complaint that it referenced an agreement governing the division of duties between the Cuyahoga County Prosecutor's Office and Department of Law, the court found that the County did not include a copy of that agreement in the record. "Thus, it is not at all clear that the Complaint was filed with the authorization of the Prosecuting Attorney." Therefore, the trial court found that the claim should be dismissed pursuant to Civ.R. 12(B)(6) for a lack of standing.

{¶ 49} The trial court next addressed Great Lakes' motion for summary judgment and the County's motion for a continuance for further discovery under Civ.R. 56(F). Initially, the trial court found that the County's Civ.R. 56(F) motion sought additional time to explore the statements of opinion or intent of the parties regarding the Cease Work Contract offered by Roe in his affidavit. However, the court ruled that the Roe affidavit was necessary only to authenticate the Cease Work Contract, and because the language of the contractual release was clear and unambiguous, the court would disregard any statement of opinion or intention contained in the affidavit. Thus, the trial court

18.

found that there was no need for a continuance under Civ.R. 56(F) and denied the County's motion.

{¶ 50} As to the contractual release, the relevant provision in the Cease Work Contract provides,

4. The County and [Great Lakes] agree and acknowledge that upon the payment in full of the compensation due to [Great Lakes] pursuant to Paragraph 3, above, that the County will have fully performed all of its contractual obligations under this Amendment to Prior Agreement and that the County shall have performed or shall have been excused from performing all of its prior obligations under the Prior Agreement. Each party agrees that upon payment, a full release of any and all claims, of every nature and type whatsoever, shall be executed, and any claim or potential claim then outstanding between the Parties shall be deemed either satisfied or waived in full forever.

{¶ 51} Based on this broad language, the trial court found that the "plain and unambiguous terms of the Release bar all of the claims asserted in this lawsuit against the Great Lakes Defendants." In reaching its conclusion, the trial court rejected the County's arguments that (1) the release was not effective because it was not executed, (2) the release was not effective because it was not supported by valid consideration, and (3) the release was not effective because it was procured by fraud. As to the County's assertion of fraud, the trial court found that the argument was without merit because the County did

19.

not plead its fraud claims with particularity as required by Civ.R. 9(B). In addition, the court found that the County was precluded from arguing that the release was procured by fraud because the County had not tendered back or offered to return the consideration in the form of Great Lakes' forborne entitlement to the full $4,400,000 under the Cuyahoga County Contract. Therefore, the trial court held that Great Lakes was entitled to summary judgment on all of the County's claims against it.

{¶ 52} Alternatively, the trial court found that all of the claims against Great Lakes should be dismissed pursuant to Civ.R. 12(B)(6). Specifically, the claim for violation of R.C. 309.12 for the protection of public funds (Count 1) must be dismissed for a lack of standing, on the statute of limitations, and under the doctrine of laches, as discussed in the analysis of the Oppmann appellees' motion for summary judgment; the claim for breach of contract (Count 2) must be dismissed for failure to allege the terms of the contract that were breached; the claim for unjust enrichment (Count 3) must be dismissed as barred by an express contract; the claim for fraud (Count 4) must be dismissed for failure to comply with the heightened pleading standard under Civ.R. 9(B); the claim for breach of fiduciary duty (Count 5) must be dismissed for merely relying on an incantation of legal standards instead of pleading a breach of any duty with facts in support; the claims for fraud in the inducement (Count 6), declaratory judgment (Count 7), violation of the Ohio Corrupt Practices Act (Count 9), and civil conspiracy (Count 10) must be dismissed for failure to comply with the heightened pleading standard under Civ.R. 9(B) as they are all fraud-related; and the claim for civil liability for criminal acts under R.C.

20.

2307.60 (Count 13) must be dismissed for failing to meet the standard of notice pleading pursuant to Civ.R. 8(A).

{¶ 53} As a final alternative, the trial court found that "as far as the Court can tell all but one of the County's claims are barred by the applicable statute of limitations based upon the 'discovery date' of July 29, 2008," referencing its analysis of the Oppmann appellees' motion for summary judgment.

{¶ 54} The trial court then addressed the remaining groups of appellees.

{¶ 55} As to M2J1, the trial court found that its motion for summary judgment was untimely, and therefore granted the County's motion to strike M2J1's motion for summary judgment. However, the court took judicial notice of M2J1's previously filed motion to dismiss, which was based upon the statute of limitations and the discovery date of July 29, 2008. For all the reasons set forth in its analysis of the County's claims against the Oppmann appellees, the court held that the claims against M2J1 were time-barred. Further, the court held that the claim for violation of R.C. 309.12 for the protection of public funds (Count 1) was dismissed under Civ.R. 12(B)(6) for lack of standing.

{¶ 56} Likewise, the trial court found that all of the claims against the Russo appellees and the MEV appellees were barred by the statute of limitations, and that Count 1 was dismissed for lack of standing.

{¶ 57} Accordingly, the trial court dismissed the County's complaint in its entirety with prejudice.

21.

## II. Assignments of Error

{¶ 58} The County has timely appealed the trial court's January 26, 2016 judgment, and now asserts 18 assignments of error for our review:

1. The Trial Court erred in dismissing all claims against all Appellees as being time barred and finding that the "discovery rule" was triggered "at least as early as July 29, 2008" based on the "evidence" appended to the Motion for Summary Judgment filed by [the Oppmann Appellees].

2. The Trial Court erred in finding that Appellant knew or should have discovered the fraud beginning "at least as early as July 29, 2008" where Appellant, the new Charter County government, was not effective as a governmental entity until January 1, 2011.

3, The Trial Court erred in finding the date of the sale of the parking garage on May 29, 2007 is the date the statute of limitations began to run on Appellant's claims against the Oppmann Appellees where Appellant's claims were based on corruption, fraud and conspiracy and not on a breach of contract.

4. The Trial Court erred in determining that all but one of the claims were time barred against [Great Lakes] pursuant to Ohio Civ.R. 12(B)(6) because it impermissibly considered evidence outside the four corners of the Complaint (i.e., unauthenticated, unreliable, impermissible evidence

attached to the Oppmann Motion for Summary Judgment as to the July 29, 2008 "discovery date").

5.  The Trial Court erred in dismissing Appellant's claims against [M2J1], [the Russo appellees], and [the MEV appellees] pursuant to Ohio Civ.R. 12(B)(6) as being time barred because it improperly took "judicial notice" of impermissible evidence outside the four corners of the Complaint in determining the "discovery date."

6.  The Trial Court erred in dismissing Appellant's claims against [M2J1], [the Russo appellees], and [the MEV appellees] pursuant to Rule 12(B)(6) in direct contravention of its order of October 1, 2015 wherein the court gave notice that Appellees were required to re-file their motions as motions for summary judgment in order for the Court to consider the merits "since the Court cannot consider matters outside of the pleadings" as none of their Motions to Dismiss were in fact converted and properly supported by evidence.

7.  The Trial Court erred in finding that all ten (10) claims brought against [Great Lakes] were barred by the "terms of the Contract and its Release Clause."

8.  The Trial Court erred in determining that Appellant failed to plead its fraud claims against [Great Lakes] with sufficient particularity so as to set aside the purported "release."

9. The Trial Court erred in, alternatively, dismissing pursuant to Civ.R. 12(B)(6) and Civ.R. 9(B) Appellant's claims against [Great Lakes] for breach of contract (Count 2), unjust enrichment (Count 3), fraud (Count 4), breach of fiduciary duty (Count 5), Fraud in the Inducement (Claim 6), declaratory judgment (Count 7), Violation of Ohio Corrupt Practices Act ("OCPA") (Count 9), Civil Conspiracy (Count 10), and civil liability for criminal acts (Count 13) because Great Lakes relied "solely upon the contractual Release of claims" in converting their Motion to Dismiss into a Motion for Summary Judgment and pleading deficiencies were therefore not before the Court.

10. The Trial Court erred in granting the Motion for Summary Judgment of the Oppmann Appellees where a motion to strike all evidence in support of the Motion for Summary Judgment was pending.

11. The Trial Court erred in granting the Motions for Summary Judgment of the Oppmann and Great Lakes Appellees where Motions to continue a ruling on summary judgment pending Ohio Civ.R. 56(F) discovery were pending.

12. The Trial Court abused its discretion in denying Appellant's Motion to Strike the Affidavit of Barbara Allen ("Allen") and Exhibits attached thereto utilized by the Oppmann Appellees to support their Motion for Summary Judgment.

13. The Trial Court abused its discretion in denying Appellant's Motion to Strike the Affidavit of Richard T. Hamilton, Jr. ("Hamilton Jr.") and Exhibits 1 and 2 attached thereto utilized by the Oppmann Appellees to support their Motion for Summary Judgment.

14. The Trial Court abused its discretion in denying Appellant's request for a continuance on a ruling on the Oppmann Appellees' Motion for Summary Judgment pending Ohio Civ.R. 56(F) where the motion was not simply a motion to dismiss converted to a motion for summary judgment.

15. The Trial Court abused its discretion in denying Appellant's Ohio Civ.R. 56(F) motion for continuance filed October 1, 2015 asking that the Court hold in abeyance a ruling on Appellees Great Lakes' Motion for Summary Judgment where the motion was not simply a motion to dismiss converted to a motion for summary judgment.

16. The Trial Court erred in dismissing Appellant's claim for violation of Ohio Rev. Code § 309.12 (Count 1) (contract in contravention of law) for lack of standing.

17. The Trial Court erred in creating a statute of limitations for claims under Ohio Rev. Code §§ 309.12 and 309.13 (Count One) and finding the claim to be time barred where Ohio law does not provide for a statute of limitation for such claim.

18.  The Trial Court erred in finding Appellant's Count 1 barred by laches where laches is not found against a governmental entity under Ohio law.

### III.  Analysis

{¶ 59} In its appellate brief, the County does not separately argue its assignments of error, instead it organizes its brief around several issues.  For ease of discussion, we will address the issues presented by the County as they pertain to each of the County's 13 claims.

### A.  Standard of Review

{¶ 60} We review the grant of a motion for summary judgment de novo, applying the same standard as the trial court.  *Lorain Natl. Bank v. Saratoga Apts.*, 61 Ohio App.3d 127, 129, 572 N.E.2d 198 (9th Dist.1989); *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).  Under Civ.R. 56(C), summary judgment is appropriate where (1) no genuine issue as to any material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party.  *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).

{¶ 61} On a motion for summary judgment, the moving party has the burden of demonstrating that no genuine issue of material fact exists.  *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996).  In doing so, the moving party must point to

26.

some evidence in the record in the form of "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action." Civ.R. 56(C); *Dresher* at 292-293. The burden then shifts to the nonmoving party to provide evidence showing that a genuine issue of material fact does exist. *Dresher* at 293.

## A. Count 1

{¶ 62} The first count in the complaint is for violation of R.C. 309.12, and it is asserted against all the appellees. R.C. 309.12 states,

Upon being satisfied that funds of the county, or public moneys in the hands of the county treasurer or belonging to the county, are about to be or have been misapplied, or that any such public moneys have been illegally drawn or withheld from the county treasury, or that a contract, in contravention of law, has been executed or is about to be entered into, or that such a contract was procured by fraud or corruption, or that any property, real or personal, belonging to the county is being illegally used or occupied, or that such property is being used or occupied in violation of contract, or that the terms of a contract made by or on behalf of the county are being or have been violated, or that money is due the county, the prosecuting attorney may, by civil action in the name of the state, apply to a court of competent jurisdiction, to restrain such contemplated misapplication of funds, or the completion of such illegal contract, or to

recover, for the use of the county, all public moneys so misapplied or illegally drawn or withheld from the county treasury, or to recover damages, for the benefit of the county, resulting from the execution of such illegal contract, or to recover, for the benefit of the county, such real or personal property so used or occupied, or to recover for the benefit of the county, damages resulting from the nonperformance of the terms of such contract, or to otherwise enforce it, or to recover such money as is due the county.

{¶ 63} In its January 26, 2016 judgment, the trial court found in favor of the appellees for three alternative reasons: (1) the claim was barred by the statute of limitations, (2) the claim was barred by the equitable doctrine of laches, or (3) the County lacked standing to pursue the claim because it was not brought by the county prosecutor. On appeal, the County challenges each of these conclusions in three issues:

Issue No. 10: The trial court erred in creating a statute of limitations for claims under Ohio Rev. Code §§309.12 and 309.13 (Count One) and finding the claim to be time barred where Ohio law does not provide for a statute of limitations for such claim.

Issue No. 11: The trial court erred in finding Appellant's Count 1 barred by laches where laches is not found against a governmental entity under Ohio law.

28.

Issue No. 9:  The trial court erred in dismissing Appellant's claim for

violation of Ohio Rev. Code § 309.12 (Count 1) (contract in contravention

of law) pursuant to Ohio Civ.R. 12(B)(6) for lack of standing where

Appellant showed it had the requisite standing.

Because we find that the trial court's dismissal of the claim under Civ.R. 12(B)(6) for

lack of standing is dispositive, we will not address the County's arguments relative to the

statute of limitations and laches as they are moot.

{¶ 64} Our review of a trial court's decision to dismiss a complaint pursuant to

Civ.R. 12(B)(6) is de novo.  *Ohio Bur. of Workers' Comp. v. McKinley*, 130 Ohio St.3d

156, 2011-Ohio-4432, 956 N.E.2d 814, ¶ 12.  In order for a court to dismiss a complaint

under Civ.R 12(B)(6) for failure to state a claim upon which relief can be granted, it must

appear beyond doubt that the plaintiff can prove no set of facts warranting relief, after all

factual allegations of the complaint are presumed true and all reasonable inferences are

made in the nonmoving party's favor.  *State ex rel. Findlay Publishing Co. v. Schroeder*,

76 Ohio St.3d 580, 581, 669 N.E.2d 835 (1996).

{¶ 65} The issue of who is entitled to bring a civil action under R.C. 309.12 for the

recovery of funds inappropriately paid by the county is not one of first impression.  In a

nearly identical situation, the Summit County Prosecuting Attorney requested an opinion

from the Ohio Attorney General regarding whether the county executive or the county

council of Summit County may commence an action for the recovery of funds under R.C.

309.12.  1995 Ohio Atty.Gen.Ops. No. 95-035.  The Ohio Attorney General reasoned that

29.

the Summit County charter imposed upon the county prosecutor those obligations placed upon him by the general law of this state. One of those general laws is R.C. 309.09(A), which provides,

> The prosecuting attorney shall be the legal adviser of the board of county commissioners, board of elections, all other county officers and boards, and all tax-supported public libraries, and any of them may require written opinions or instructions from the prosecuting attorney in matters connected with their official duties. The prosecuting attorney shall prosecute and defend all suits and actions that any such officer, board, or tax-supported public library directs or to which it is a party, and no county officer may employ any other counsel or attorney at the expense of the county, except as provided in section 305.14 of the Revised Code.

{¶ 66} The Ohio Attorney General then cited *County of Summit ex rel. Slaby v. Morgan*, 9th Dist. Summit No. 10270, 1981 Ohio App. LEXIS 11194, *13-14 (Nov. 25, 1981), where the court, in addressing the balance between the county prosecutor and the general counsel stated,

> We are of the opinion that the prosecuting attorney alone is the legal representative of both the county council and executive within the prescribed limits of the statutes of this state.
>
> * * *

30.

To dispel any implication to the contrary, we must add that although the prosecuting attorney is not the *exclusive* legal advisor to agencies of the county government, general counsel by some implication arising by virtue of the creation of a staff position is *not* empowered by law or charter to represent any of these entities. (Emphasis sic.)

{¶ 67} Therefore, the Ohio Attorney General advised,

[I]t is the Summit County Prosecuting Attorney who has authority to bring an action for the recovery of county funds [under R.C. 309.12]. The only exceptions to the commencement of an action by the prosecuting attorney on behalf of the county for the recovery of public funds are where the court of common pleas approves the appointment of counsel, other than the prosecuting attorney, in accordance with R.C. 305.14(A) or where the prosecuting attorney fails to bring an action under R.C. 117.28 within a certain period of time, in which case the Attorney General may bring an action under that section for the recovery of such funds. I conclude, therefore, that, in the absence of contrary provision in the Summit County charter and absent approval by the court of common pleas of the appointment of other counsel in accordance with R.C. 305.14(A), it is the duty of the Summit County Prosecuting Attorney, rather than the county executive or the county council, to bring an action for the recovery of funds

found by the Auditor of State to be owing to the county. 1995 Ohio Atty.Gen.Ops. No. 95-035.

{¶ 68} Similar to the Summit County Charter, Article IV, Section 4.01 of the Cuyahoga County Charter states, "The Prosecuting Attorney shall be elected, and the duties of that office, and the compensation therefor, including provision for the employment of outside counsel, shall continue to be determined in the manner provided by general law." Thus, the prosecuting attorney "shall prosecute and defend all suits and actions" for the county, and "no county officer may employ any other counsel or attorney at the expense of the county, except as provided in section 305.14 of the Revised Code." R.C. 309.09(A). R.C. 305.14(A) provides, in turn,

> The court of common pleas, upon the application of the prosecuting attorney and the board of county commissioners, may authorize the board to employ legal counsel to assist the prosecuting attorney, the board, or any other county officer in any matter of public business coming before such board or officer, and in the prosecution or defense of any action or proceeding in which such board or officer is a party or has an interest, in its official capacity.

{¶ 69} Here, there is no evidence in the record that the County and the prosecuting attorney applied to the court of common pleas to authorize the County to employ other legal counsel to represent the County in its official capacity. Instead, the County cites a statement in the signature block of the complaint that "Representation and designation

pursuant to August 27, 2013 Agreement governing the division of duties between the Cuyahoga County Prosecutor's Office and Department of Law." We find that this statement is not sufficient to comply with the procedure in R.C. 305.14, and therefore we hold that the trial court did not err in determining that the county law department did not have standing to bring this claim under R.C. 309.12.

{¶ 70} On appeal, the County now asserts, for the first time, that the "August 27, 2013 Agreement" provided that "The Cuyahoga County Prosecutor shall designate all current and future attorneys in the law department doing litigation for the County as Assistant Prosecuting attorneys, unless for good cause shown." In addition, the County argues in its reply brief on appeal, for the first time, that the August 27, 2013 Agreement was adopted by resolution No. R-2013-0184, and thus the present situation falls outside of the Attorney General's opinion to Summit County, which was contingent on "the absence of contrary provision in the Summit County charter." 1995 Ohio Atty.Gen.Ops. No. 95-035. However, "it is well established that a party cannot raise any new issues or legal theories for the first time on appeal." *Cawley JV, L.L.C. v. Wall St. Recycling L.L.C.*, 2015-Ohio-1846, 35 N.E.3d 30, ¶ 17 (8th Dist.). Furthermore, the "August 27, 2013 Agreement" is not in the record, and "[a] reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter." *State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500 (1978), paragraph one of the syllabus. Finally, even if we could consider it, resolution No. R-2013-0184 is not an amendment to the county charter. *See* Article XII,

33.

Section 12.10 of the Cuyahoga County Charter ("Proposed amendments to this Charter shall be submitted to the electors of the County in the manner provided for by the Ohio Constitution.").

{¶ 71} Because the county law director did not have standing to assert the claim under R.C. 309.12, such claim must be dismissed. *See State ex rel. Dreamer v. Mason*, 8th Dist. Cuyahoga Nos. 89249 and 89250, 2007-Ohio-271, ¶ 10-12 (dismissing petition for writ of mandamus because counsel was not authorized to bring the action on behalf of the Cuyahoga County Board of Elections), *rev'd in part on other grounds*, *State ex rel. Dreamer v. Mason*, 115 Ohio St.3d 190, 2007-Ohio-4789, 874 N.E.2d 510.

{¶ 72} Finally, we note that our decision on this issue is limited to the County's claim for recovery of funds under R.C. 309.12, because that is the only count for which the statute exclusively authorizes the county prosecutor to bring the claim.

{¶ 73} Accordingly, we hold that the County's ninth, tenth, and eleventh issues are without merit, and summary judgment in favor of all the appellees on the County's first claim is appropriate.

## C. Count 2

{¶ 74} In the second count of the complaint, the County asserts a claim against Great Lakes for breach of the Cuyahoga County Contract. The trial court granted judgment in favor of Great Lakes on the grounds that the claim was barred by a contractual release in the Cease Work Contract. In its appellate brief, the County raises three issues applicable to this claim.

Issue No. 4: The trial court erred in dismissing all of Appellant's claims against Great Lakes finding them barred by a release particularly where there were multiple issues of material fact as to whether the release was signed, procured by fraud, and supported by consideration which required a tender back from Appellant to Great Lakes.

Issue No. 6: The Trial court erred in granting summary judgment on the Oppmann and Great Lakes' Motions for Summary Judgment without the benefit of any discovery where motions by Appellant to stay rulings on summary judgment to allow time for discovery into areas not addressed in the original motions to dismiss, and to strike evidence from the Oppmann motion for summary judgment were pending.

Issue No. 7: The trial court abused its discretion in denying Appellant's motions to continue rulings on the Oppmann and Great Lakes "converted" motions for summary judgment where those motions addressed topics and evidence not relied upon in their original motions to dismiss.

{¶ 75} In support of these issues, the County first implies that the language of the release is ambiguous and that it was error to award summary judgment based on the release where there was a genuine issue of material fact as to the parties' intention regarding the release. The release contained in the Cease Work Contract states, in pertinent part, "Each party agrees that upon payment, a full release of any and all claims, of every nature and type whatsoever, shall be executed, and any claim or potential claim

then outstanding between the Parties shall be deemed either satisfied or waived in full forever."

{¶ 76} "A release of a cause of action for damages is ordinarily an absolute bar to a later action on any claim encompassed within the release." *Haller v. Borror Corp.*, 50 Ohio St.3d 10, 13, 552 N.E.2d 207 (1990). "A release is a contract, and, as such, the overriding consideration in interpreting a release is to ascertain the intent of the parties, which intent is presumed to reside in the language the parties chose to employ in the agreement." *McBroom v. Safford*, 10th Dist. Franklin No. 11AP-885, 2012-Ohio-1919, ¶ 12, citing *Whitt v. Hutchison*, 43 Ohio St.2d 53, 330 N.E.2d 678 (1975). "A court will resort to extrinsic evidence in its effort to give effect to the parties' intentions only where the language is unclear or ambiguous, or where the circumstances surrounding the agreement invest the language of the contract with a special meaning." *Kelly v. Medical Life Ins. Co.*, 31 Ohio St.3d 130, 132, 509 N.E.2d 411 (1987).

{¶ 77} In its reply brief on appeal, the County argues that one cannot derive from a plain reading of the release an intention on the part of the County to release all claims, known and unknown. We disagree, at least as to the claim for a breach of the Cuyahoga County Contract.[5] The release encompasses "any and all claims, of every nature and type whatsoever." Further, "any claim or potential claim then outstanding" was deemed satisfied or waived. We find that this language is unambiguous, and is sufficient to

[5] The trial court granted summary judgment based on the release of all claims against Great Lakes, even those claims that were based on breach of the Cease Work Contract in which the release was contained. We will address those claims in due course.

36.

demonstrate the intent of the parties to waive claims for all injuries relating to a breach of the Cuyahoga County Contract, whether known or unknown at the time. *See Sloan v. Standard Oil Co.*, 177 Ohio St. 149, 203 N.E.2d 237 (1964), paragraph one of the syllabus ("A release may be avoided where the releasor can establish by clear and convincing evidence that it was executed by mutual mistake, as between himself and the releasee, of a past or present fact material to the release, as where there was a mutual mistake as to the existence of any injury of the releasor, unless it appears further that the parties *intended* that claims for all injuries, whether known or unknown at the time of the execution of the release, be relinquished." (Emphasis sic.)). Therefore, we hold that Great Lakes has met its initial burden on summary judgment to demonstrate that no material fact exists that the claim is barred by the contractual release.

**{¶ 78}** The burden then shifts to the County to demonstrate that a genuine issue of material fact exists regarding whether the release is enforceable. Here, the County alleges that the release in the Cease Work Contract was obtained by fraud in the inducement. "To avoid [a bar on any claim encompassed within the release], the releasor must allege that the release was obtained by fraud and that he has tendered back the consideration received for his release." *Haller*, 50 Ohio St.3d at 13, 552 N.E.2d 207. "[A] release obtained by fraud in the inducement is merely voidable upon proof of fraud." *Id.* "A claim of fraud in the inducement arises when a party is induced to enter into an agreement through fraud or misrepresentation, 'The fraud relates not to the nature or purport of the [contract], but to the facts inducing its execution * * *.'" *Abm Farms v.*

37.

*Woods*, 81 Ohio St.3d 498, 502, 692 N.E.2d 574 (1998), quoting *Haller* at 14. "In order to prove fraud in the inducement, a plaintiff must prove that the defendant made a knowing, material misrepresentation with the intent of inducing the plaintiff's reliance, and that the plaintiff relied upon that misrepresentation to her detriment." *Id.*, citing *Beer v. Griffith*, 61 Ohio St.2d 119, 123, 399 N.E.2d 1227 (1980).

{¶ 79} Here, the County did not provide any evidence in response to Great Lakes' motion for summary judgment to demonstrate that the Cease Work Contract was procured by fraud. Instead, the County merely relied upon its allegations in the complaint to argue that Great Lakes was "grossly overpaid" for the work that it did, and that such gross overpayment demonstrated fraud in the inducement. However,

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party. Civ.R. 56(E).

Thus, because the County did not put forth any specific facts showing that a genuine issue of material fact existed regarding whether the Cease Work Contract was procured by fraud, the County has not met its burden and summary judgment in favor of Great Lakes is appropriate.

38.

{¶ 80} The County, arguing against this result, asserts in its sixth and seventh issues that the trial court erred in granting summary judgment without affording the County an opportunity to conduct discovery under Civ.R. 56(F), which provides,

> Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just.

{¶ 81} "The trial court has wide discretion to grant or deny a request for a continuance pursuant to Civ.R. 56(F) and its decision will not be reversed absent an abuse of that discretion." *Scanlon v. Scanlon*, 2013-Ohio-2694, 993 N.E.2d 855, ¶ 24 (8th Dist.). An abuse of discretion connotes that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Ruwe v. Bd. of Springfield Twp. Trustees*, 29 Ohio St.3d 59, 61, 505 N.E.2d 957 (1987). While the trial court has discretion to determine whether additional time to gather rebuttal evidence is appropriate, "that discretion should be exercised liberally in favor of a nonmoving party who proposes any reasonable interval for the production of [rebuttal evidence]," where there is a realistic possibility that genuine issues of material fact will require jury consideration. *Whiteleather v. Yosowitz*, 10 Ohio App.3d 272, 276, 461 N.E.2d 1331 (8th Dist.1983).

39.

{¶ 82} In this case, the County stated in its Civ.R. 56(F) affidavit that Great Lakes' motion for summary judgment included an affidavit from Robert Roe that, in addition to authenticating the Cease Work Contract, asserted disputed facts, opinions, and conclusions. The County further stated that it needed time to contradict the Roe affidavit, and to "conduct discovery and depositions in order to adequately support its factual Opposition to the Motion for Summary Judgment filed by [Great Lakes]." In addition to these general statements, in the County's Civ.R. 56(F) motion contained within its opposition to Great Lakes' motion for summary judgment, the County asserted that some of the information necessary to oppose the Roe affidavit will come from Calabrese and from his communications with Roe, which is made more difficult because Calabrese is currently in federal prison. Further, the County stated that "many of the people who can testify as to the intent of the County are either in Federal Prison or no longer in the Cleveland area." Finally, the County offered that the federal government had seized thousands of documents for its use in prosecuting the corruption cases, and that those files "have recently been returned" to the County but will take substantial time to review.

{¶ 83} In denying the County's Civ.R. 56(F) motion, the trial court reasoned that the County's expressed need for discovery was to explore the statements of opinion or intent contained in the Roe affidavit. Importantly, the main contention in the County's opposition to Great Lakes' motion for summary judgment was that the parties did not intend to release the claims that were based on Great Lakes' purported corrupt and fraudulent conduct. However, as noted above, the court found that the release was

40.

unambiguous, and thus the Roe affidavit was necessary only for purposes of authenticating the Cease Work Contract. Accordingly, the trial court affirmatively disregarded any ancillary statements of opinion or intention contained in the Roe affidavit. Under those circumstances, the trial court found that there was no need for a continuance for discovery of Great Lakes' intent regarding the scope of the release in the Cease Work Contract. In that context, we hold that the trial court's denial of the County's Civ.R. 56(F) motion was not an abuse of discretion.

{¶ 84} To the extent that the County now emphasizes that discovery was needed to show that the Cease Work Contract was procured by fraud, we still find that the trial court's denial was not an abuse of discretion. Although discovery had not yet begun, the County filed its Civ.R. 56(F) motion 16 months after the complaint, and nearly 15 months after Great Lakes moved to dismiss the complaint on the grounds that it was barred by the release in the Cease Work Contract. In that time, the County failed to obtain an affidavit from any of its current or former agents to substantiate its claim that the Cease Work Contract was procured by fraud.

{¶ 85} Therefore, we find that the County's fourth, sixth, and seventh issues are without merit. We hold that the trial court did not abuse its discretion in denying the County's Civ.R. 56(F) motion for a continuance for discovery, and that summary judgment in favor of Great Lakes on Count 2 was appropriate.[6]

---

[6] By virtue of our conclusion, we need not reach the County's argument challenging the trial court's determination that the County is prevented from even asserting fraud in the

41.

## D. Statute of Limitations

{¶ 86} The crux of the trial court's dismissal of many claims in this lawsuit concerns when the causes of action accrued for purposes of determining whether the claims were filed within the respective statute of limitations. "Ordinarily, a cause of action accrues and the statute of limitations begins to run at the time the wrongful act was committed." *Doe v. Archdiocese of Cincinnati*, 109 Ohio St.3d 491, 2006-Ohio-2625, 849 N.E.2d 268, ¶ 21, quoting *Collins v. Sotka*, 81 Ohio St.3d 506, 507, 692 N.E.2d 581 (1998). "Under the discovery rule, the statute of limitations begins to run when the plaintiff discovers or, through the exercise of reasonable diligence, should have discovered a possible cause of action." *Id.*

{¶ 87} The first three issues raised by the County in its appellate brief challenge the trial court's determination that July 29, 2008, is the starting point for determining whether the claims fall outside of the respective statutes of limitations.

{¶ 88} In its first issue, the County asserts,

Issue No. 1: The Trial Court erred when it determined the "discovery date" for fraud accrued on July 29, 2008 based on unreliable, unauthenticated, improper documents attached to the Oppmann Motion for Summary Judgment and took judicial notice of that date in dismissing all claims against all other Appellees as being time barred because it

---

inducement without first tendering back the consideration it received for entering into the Cease Work Contract.

42.

impermissibly considered evidence outside the four corners of the complaint in ruling on their Ohio Civ.R. 12(B)(6) motions to dismiss.

{¶ 89} In support of its first issue, the County argues that the trial court erred in finding that the discovery date for purposes of all of its claims was July 28, 2008, as opposed to July 16, 2013, when Calabrese was indicted. The trial court's conclusion that July 29, 2008, is the relevant date is based upon two Cleveland Plain Dealer online newspaper articles that were submitted in support of the Oppmann appellees' motion for summary judgment. Those articles, published on July 28 and 29, 2008, respectively, reported on the allegations of public corruption levied against Dimora, as well as the execution of a search warrant by federal authorities at Dimora's office. Linked to the July 29, 2008 article was a copy of the search warrant, which indicated that the federal authorities were looking for, among other things, "documents reflecting James 'Jimmy' Dimora's deliberative process, discussions, analysis or actions regarding the following: * * * 2. Ameritrust project (Cuyahoga County Administration Building)."

{¶ 90} The County argues that the newspaper articles relied upon by the trial court are inadmissible because they are hearsay and are inherently unreliable.[7] Hearsay "is a

---

[7] Notably, the County acknowledges in its appellate brief that the newspaper reports are self-authenticating under Evid.R. 902(6), which provides, "Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following: * * * (6) **Newspapers and periodicals.** Printed materials purporting to be newspapers or periodicals, including notices and advertisements contained therein." Contrarily, in its reply brief, the County raises, for the first time, the argument that the articles are not self-authenticating because they were not *printed*. However, "[I]t is well established that a party cannot raise any new issues or legal theories for the first time on

43.

statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). While it is true that "newspaper articles are generally inadmissible as evidence of the facts stated in them," *Plavecski v. Cleveland Clinic Found.*, 192 Ohio App.3d 533, 2010-Ohio-6016, 949 N.E.2d 1007, ¶ 19 (8th Dist.), here the newspaper articles were not offered to prove the truth of the matter asserted. Rather, the newspaper articles were offered to establish when the County, through reasonable diligence, should have discovered the possible causes of action. Therefore, the newspaper articles are not hearsay.

{¶ 91} Additionally, the County notes, correctly, that nothing in the newspaper articles mentioned the Ameritrust project or the purchase of the parking garage so as to put it on notice of any potential wrongdoing regarding those deals. That detail is instead found in the linked search warrant. However, the County argues that there is no indicia of reliability that the search warrant was public and available on the internet at the time claimed by the Oppmann appellees. We disagree. The July 29, 2008 article was published at 1:14 p.m. It was last updated on July 29, 2008, at 10:54 p.m. The article itself states, "See the attachment to the search warrant below or download these PDFs: **Search warrant [http://blog.cleveland.com/metro/2008/07/_dimorasearchwarrant.pdf]**." The Oppmann appellees' attorney testified in his affidavit that he followed the link in the article

---

appeal." *Cawley JV, L.L.C. v. Wall St. Recycling L.L.C.*, 2015-Ohio-1846, 35 N.E.3d 30, ¶ 17 (8th Dist.), quoting *Hollish v. Maners*, 5th Dist. Knox No. 2011CA000005, 2011-Ohio-4823, ¶ 44. Thus, the County has waived the argument that the newspaper articles are not self-authenticating. *Id.*

44.

and attached the referenced search warrant. Thus, because the article has not been updated since 10:54 p.m. on July 29, 2008, there is sufficient indicia of reliability that the search warrant produced by following the link is the same search warrant that would have been accessed by a person following the link on July 29, 2008. Therefore, we reject the County's unfounded speculation that the search warrant was not available at that time, and hold that the trial court did not err in considering the newspaper articles and search warrant on summary judgment.

{¶ 92} Relatedly, in its eighth issue, the County argues that the trial court erred in denying its motion to strike the affidavits in support of the Oppmann appellees' motion for summary judgment:[8]

Issue No. 8: The trial court abused its discretion in denying Appellant's motions to strike the exhibits supporting the Oppmann Appellees' Motion for Summary Judgment where the exhibits contained unreliable, unauthenticated impermissible Rule 56(C) material.

{¶ 93} "A trial court's decision to grant or deny a motion to strike will not be overturned on appeal absent a showing of abuse of discretion." *State ex rel. Mora v. Wilkinson*, 105 Ohio St.3d 272, 2005-Ohio-1509, 824 N.E.2d 1000, ¶ 10, quoting *Samadder v. DMF of Ohio, Inc.*, 154 Ohio App.3d 770, 2003-Ohio-5340, 798 N.E.2d 1141, ¶ 17 (10th Dist.). Here, the County moved to strike the affidavit of the Oppmann

---

[8] In its appellate brief, the County challenges the trial court's denial of its motion to strike both the affidavit of Barbara Allen and the affidavit of the Oppmann appellees' attorney. At this point, our analysis is limited to the affidavit of the Oppmann appellees' attorney.

45.

appellees' attorney because he did not have personal knowledge of the creation or maintenance of the documents, nor did he have personal knowledge of the facts contained therein.[9] The trial court disagreed, and found that the attorney had personal knowledge because he was the individual that conducted the Google search that led him to discover the attached exhibits.

{¶ 94} We do not find the trial court's attitude in reaching its decision to be arbitrary, unreasonable, or unconscionable. In this case, the affiant's personal knowledge of the facts contained in the newspaper articles is irrelevant; as discussed above, the articles were not offered to prove the truth of the matter asserted, but rather were offered to prove simply that the matter was being reported. In that regard, the affiant had personal knowledge of the attached articles because he personally observed them. Therefore, we hold that the trial court did not abuse its discretion when it denied the County's motion to strike, and the County's eighth issue is without merit.

{¶ 95} The next issue we must confront is whether, based on the newspaper articles and search warrant, the trial court erred when it concluded that the County should have discovered the possible causes of action on July 29, 2008. In determining whether the published documents were sufficient to alert a reasonable person to the possibility of wrongdoing, we must be careful not to fall into the trap of relying on the truth of the statements contained in the documents. Indeed, were we to rely on those statements, the

---

[9] Civ.R. 56(E) mandates that affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit."

46.

obvious conclusion would be that the County was certainly aware of the possibility of wrongdoing as it was county officials who released the details of the search warrant, and the warrant was executed at the County Administrative Building. However, as discussed above, the articles are relevant not because they are or are not true, but because they were published.

{¶ 96} In that context, the narrow question before us is whether the evidence of publication of news articles alleging public corruption involving the Ameritrust project demonstrates that there is no genuine issue of material fact that the County should have discovered the possibility of wrongdoing through the exercise of reasonable diligence. Under these circumstances, we hold that it does.

{¶ 97} Initially, we note that there is no evidence in the record directly showing that any agent of the County read the aforementioned articles. Thus, to impute knowledge of the articles to the County we must infer that someone from the County read or was aware of those articles. Although we must "construe the evidence and all reasonable inferences drawn therefrom in a light most favorable to the party opposing the motion," *Beder v. Cleveland Browns*, 129 Ohio App.3d 188, 193, 717 N.E.2d 716 (8th Dist.1998), citing *Morris v. Ohio Cas. Ins. Co.*, 35 Ohio St.3d 45, 517 N.E.2d 904 (1988), we hold that the only reasonable inference is that the County was aware of the articles. Indeed, we conclude that it would be patently unreasonable to infer that the County was completely ignorant of the salacious allegations of public corruption involving a county commissioner, and the corresponding execution of the search warrant

47.

relative to the Ameritrust project, which were reported in the leading news publication in the region.[10]  Thus, we hold that the Oppmann appellees have met their initial burden of demonstrating that there are no genuine issues of material fact.  *See Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978) ("The burden of showing that no genuine issue exists as to any material fact falls upon the moving party in requesting a summary judgment.").

{¶ 98} "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  Civ.R. 56(E); *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988).  Here, the County did not submit any affidavits or other evidence demonstrating that it was unaware of the allegations contained in the newspaper articles.  Therefore, we hold that there is no genuine issue of material fact, and the discovery date for purposes of the County's claims was July 29, 2008.

{¶ 99} The County next argues under its first issue that the trial court erred when it took "judicial notice" of the evidence attached to the Oppmann appellees' motion for summary judgment and used it to find that the claims against the other groups of

---

[10] We are careful to emphasize that our holding is limited to the particular facts of this case.  We do not intend to hold that in every case the publication of a news article is sufficient to alert a person exercising reasonable diligence of possible wrongdoing, without evidence that the person was aware of the article.

48.

appellees also had a discovery date of July 29, 2008. To the contrary, "[a] court certainly may take judicial notice of the record and proceedings in the case before it." *Davenport v. Big Bros. & Big Sisters of the Greater Miami Valley, Inc.*, 2d Dist. Montgomery No. 23659, 2010-Ohio-2503, ¶ 24; *Ghaster v. City of Rocky River*, 8th Dist. Cuyahoga No. 99779, 2013-Ohio-5587, ¶ 19 ("A trial court may only take judicial notice of prior proceedings in the immediate case."). In addition, the County's argument emphasizes that the trial court impermissibly relied on matters outside of the complaint to grant the appellees' motion to dismiss. However, it is clear from the record that the trial court converted the motions to dismiss into motions for summary judgment as provided under Civ.R. 12(B).[11] Further, to the extent the County argues that the trial court erred in granting summary judgment to all of the appellees on the basis of the statute of limitations, despite some of the parties not raising the issue in their motions for summary judgment, or expressly withdrawing the issue for a later time, we find no prejudicial error. In this case, the statute of limitations arguments were not unique to each individual defendant, and the County had ample opportunity to respond to the arguments that the claims were outside of the statute of limitations. *See* Civ.R. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."); *Luri v. Republic Servs.*, 2014-Ohio-3817, 18

---

[11] "When a motion to dismiss for failure to state a claim upon which relief can be granted presents matters outside the pleading and such matters are not excluded by the court, the motion shall be treated as a motion for summary judgment and disposed of as provided in Rule 56. * * * All parties shall be given reasonable opportunity to present all materials made pertinent to such a motion by Rule 56." Civ.R. 12(B).

49.

N.E.3d 844, ¶ 9 (8th Dist.) ("Under the concept of harmless error, it is neither prudent nor appropriate for this court to order a trial court to remedy an error that does not affect the outcome of the case."). Thus, we hold that the trial court did not err in taking judicial notice of the evidence attached to the Oppmann appellees' motion for summary judgment.

{¶ 100} Finally, the County argues that the trial court erred in taking judicial notice without first providing the County with notice as required under Evid.R. 201. However, Evid.R. 201(C) provides that "A court may take judicial notice, whether requested or not," and Evid.R. 201(E) states that "A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. *In the absence of prior notification, the request may be made after judicial notice has been taken.*" (Emphasis added.) Thus, Evid.R. 201 does not require prior notification before taking judicial notice. Further, the County did not request an opportunity to be heard as to the propriety of taking judicial notice at any point before or after the trial court granted the appellees' motions for summary judgment. "If a party fails to timely request an opportunity to be heard regarding judicial notice, the party waives or forfeits any challenges to the judicially-noticed facts." *Fettro v. Rombach Ctr., LLC*, 12th Dist. Clinton No. CA2012-07-018, 2013-Ohio-2279, ¶ 30. Therefore, the County has waived this argument, and even if it had not, the argument is without merit.

{¶ 101} Accordingly, we hold that the County's first issue is without merit.

50.

{¶ 102} The County next asserts the following issues:

Issue No. 2: The Trial Court erred in determining that Appellant had the requisite knowledge for purposes of discovery of the possible fraud as of July 29, 2008 where there was no evidence that Appellant knew the contents of a search warrant, still admittedly sealed, proffered by the Oppmann Appellees as support for their Motion for Summary Judgment.

Issue No. 3: The Trial Court erred in determining that Appellant, a new charter executive/legislative form of government with home rule authority knew or should have discovered the fraud of Appellees as of July 29, 2008 where it was not in existence until January 1, 2011.

{¶ 103} In support of these issues, the County makes two arguments. First, the County argues that the trial court erred in finding that the County should have reasonably discovered the basis for the claims on July 29, 2008, when the new charter executive form of county government was not even in existence until January 1, 2011. However, the County's argument presumes that the new form of government recreates Cuyahoga County as a new entity entirely. Under the County's argument any claim would not have been "discovered" until January 1, 2011, regardless if the event occurred in 2005, 1995, or 1905, which is an absurd result. Moreover, if the relationship between the former county government and the current county government is so attenuated that the current government cannot be imputed with the knowledge of the former, we find it inconsistent

to hold that the current government could nevertheless assert the former government's claims for injuries.

{¶ 104} Second, the County argues that the trial court erred in finding the discovery date to be July 29, 2008, because while Dimora may have been on notice of the wrongdoing at the time, "[n]otice/knowledge of fraud by the purported bad actor does not constitute notice/knowledge of fraud by the corporation." In support of this proposition, the County cites authority from the Iowa Supreme Court. In this case, we need not examine whether Ohio law agrees with this proposition because the discovery date of July 29, 2008, is not based on Dimora's knowledge, but rather the publication of the allegations and search warrant in the Cleveland Plain Dealer.

{¶ 105} Accordingly, we find the County's second and third issues to be without merit.

{¶ 106} The County also asserts in its sixth and seventh issues, articulated above, that the trial court erred in granting summary judgment where there was a pending Civ.R. 56(F) motion in opposition to the Oppmann appellees' motion for summary judgment. However, the County did not file an affidavit in support of its motion as required by the rule. "Where no affidavit is presented in support of a motion for extension under Civ.R. 56(F), a court may not grant an extension pursuant thereto." *Cook v. Toledo Hosp.*, 169 Ohio App.3d 180, 2006-Ohio-5278, 862 N.E.2d 181, ¶ 42 (6th Dist.); *see also State ex rel. Coulverson v. Ohio Adult Parole Auth.*, 62 Ohio St.3d 12, 14, 577 N.E.2d 352 (1991) (where no valid affidavit was filed, the court "could not act under Civ.R. 56(F)").

52.

**{¶ 107}** Therefore, we find the County's sixth and seventh issues to be without merit.

**{¶ 108}** Accordingly, we will use the discovery date of July 29, 2008, to determine whether the County's claims are outside of the statute of limitations. We will now address each of the County's remaining 11 claims in turn.

### 1. Count 3

**{¶ 109}** In its third count, the County asserts that all the appellees were unjustly enriched by the amounts paid for the Cuyahoga County Contract, the Cease Work Contract, and the purchase of the Oppmann parking garage. We find that the trial court properly granted summary judgment on this claim because it is barred by the statute of limitations.

**{¶ 110}** A claim for unjust enrichment is a claim in quasi-contract, and is therefore subject to the six-year statute of limitations in R.C. 2305.07.[12] *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 182, 465 N.E.2d 1298 (1984). Thus, since the complaint was filed on May 30, 2014, the claim is barred by the statute of limitations if the causes of action accrued before May 30, 2008. Notably, "[t]he discovery rule does not apply to unjust enrichment claims." *Drozeck v. Lawyers Title Ins. Corp.*, 140 Ohio App.3d 816, 749 N.E.2d 775 (8th Dist.2001). Rather, "[a] claim for unjust enrichment accrues on the

---

[12] R.C. 2305.07 provides, "Except as provided in sections 126.301 and 1302.98 of the Revised Code, an action upon a contract not in writing, express or implied, or upon a liability created by statute other than a forfeiture or penalty, shall be brought within six years after the cause thereof accrued."

53.

date that money is retained under circumstances that make it unjust to do so." *Pomeroy v. Schwartz*, 8th Dist. Cuyahoga No. 99638, 2013-Ohio-4920, ¶ 41, quoting *Palm Beach Co. v. Dun & Bradstreet*, 106 Ohio App.3d 167, 175, 665 N.E.2d 718 (1st Dist.1995).

{¶ 111} Here, according to the complaint, the Cuyahoga County Contract was entered into in 2004, the Cease Work Contract was entered into in 2005, and the sale of the Oppmann parking garage was completed in 2007. Thus, all of the causes of action accrued before May 30, 2008. Therefore, we hold that the trial court did not err in awarding summary judgment to all appellees on the count of unjust enrichment as the claim was barred by the statute of limitations.

### 2. Count 4

{¶ 112} In the fourth count, the County asserts a claim of fraud against Great Lakes. A claim of fraud is subject to the four-year statute of limitations in R.C. 2305.09. *Cundall v. U.S. Bank*, 122 Ohio St.3d 188, 2009-Ohio-2523, 909 N.E.2d 1244, ¶ 24. Applying the discovery date of July 29, 2008, the claim filed on May 30, 2014, is time-barred. Therefore, we hold that the trial court did not err in granting summary judgment to Great Lakes on Count 4 on the grounds that it was barred by the statute of limitations.

### 3. Count 5

{¶ 113} In the fifth count, the County asserts a claim for breach of fiduciary duty against Great Lakes. A claim for breach of fiduciary duty is subject to the four-year statute of limitations in R.C. 2305.09. *Cleveland Indus. Square, Inc. v. Dzina*, 8th Dist. Cuyahoga Nos. 85336, 85337, 85422, 85423, 85441, 2006-Ohio-1095, ¶ 45, fn. 1. "A

54.

cause of action for breach of fiduciary duty arises when the act or commission constituting the breach of fiduciary duty occurred. The discovery rule does not toll the statute of limitations for a breach of fiduciary duty claim." *Id.*, citing *Helman v. EPL Prolong, Inc.*, 139 Ohio App.3d 231, 249, 743 N.E.2d 484 (7th Dist.2000). Here, it is unclear whether the County is alleging breach of fiduciary duty in Great Lakes' performance under the Cuyahoga County Contract or its negotiations under the Cease Work Contract, but in either event, the cause of action would have accrued at the latest in 2005 when the Cease Work Contract was completed. Therefore, we hold that the trial court did not err in awarding summary judgment to Great Lakes on Count 5 as being barred by the statute of limitations.

### 4. Count 6

{¶ 114} In the sixth count, the County brings a claim of fraud in the inducement against Great Lakes, relating to the Cease Work Contract. Like the fraud claim in Count 4, the County's claim of fraud in the inducement is subject to the four-year statute of limitations in R.C. 2305.09. Thus, it is similarly time-barred, and we hold that the trial court did not err in awarding summary judgment on this count in favor of Great Lakes.

### 5. Count 7

{¶ 115} In Count 7, the County asserts a claim for declaratory judgment against Great Lakes, declaring that the Cease Work Contract was induced by fraud and is therefore void. Although styled as seeking declaratory relief, the underlying claim is for fraud in the inducement. Thus, Count 7 is also subject to the four-year statute of

55.

limitations in R.C. 2305.09. *See Ricketts v. Everflow E., Inc.*, 2016-Ohio-4807, 68 N.E.3d 165, ¶ 15 (7th Dist.) (declaratory judgment action revolved around breach of an oil and gas lease contract, and was therefore subject to the statute of limitations in R.C. 2305.041). Therefore, we hold that the trial court did not err in granting summary judgment in favor of Great Lakes on Count 7, as it was barred by the statute of limitations.

### 6. Count 8

{¶ 116} In the eighth count, the County asserts a claim for fraud against the Oppmann appellees based on their conduct surrounding the sale of the parking garage. As stated above, claims of fraud are subject to a four-year statute of limitations under R.C. 2305.09. Thus, applying the discovery date of July 29, 2008, this count is time-barred, and we hold that the trial court did not err in awarding summary judgment in favor of the Oppmann appellees on Count 8.

### 7. Count 9

{¶ 117} In Count 9, the County asserts that Great Lakes, the Russo appellees, and M2J1 violated the Ohio Corrupt Practices Act under R.C. 2923.31 et seq. Pursuant to R.C. 2923.34(J), "a civil proceeding or action under this section may be commenced at any time within five years after the unlawful conduct terminates or the cause of action accrues or within any longer statutory period of limitations that may be applicable." In this case, the cause of action accrued at the latest on July 29, 2008, but the complaint was not filed until May 30, 2014. Therefore, the claim is outside of the five-year statute of

56.

limitations, and we hold that the trial court properly granted summary judgment to Great Lakes, the Russo appellees, and M2J1 on this claim.

### 8. Count 10

{¶ 118} Count 10 of the complaint asserts a claim of civil conspiracy against Great Lakes, the Russo appellees, and M2J1. "[A] claim for conspiracy cannot be made subject of a civil action unless something is done which, in the absence of the conspiracy allegation, would give rise to an independent cause of action." *Cully v. St. Augustine Manor*, 8th Dist. Cuyahoga No. 67601, 1995 Ohio App. LEXIS 1643, *10 (Apr. 20, 1995), citing *Katz v. Banning*, 84 Ohio App.3d 543, 552, 617 N.E.2d 729 (10th Dist.1992). "Thus, the applicable statute of limitations for the underlying cause of action applies to the civil conspiracy charge." *Id.* at *11.

{¶ 119} Here, the County alleges that the named defendants conspired to obtain and inflate the price of the Cuyahoga County Contract and the Cease Work Contract for their own personal gain. We find that the underlying allegation sounds in fraud, and is therefore subject to the four-year statute of limitations in R.C. 2305.09. Consequently, like the other fraud claims, the County's claim for civil conspiracy in Count 10 was filed outside of the statute of limitations, and we hold that the trial court did not err in awarding summary judgment to Great Lakes, the Russo appellees, and M2J1 on this count.

57.

### 9. Count 11

{¶ 120} In Count 11 the County alleges that the Oppmann appellees and the MEV appellees violated the Ohio Corrupt Practices Act under R.C. 2923.31 et seq. For the same reasons articulated in our discussion of Count 9, the County's claim under Count 11 is barred by the five-year statute of limitations pursuant to R.C. 2923.34(J). Accordingly, we hold that the trial court did not err when it awarded summary judgment to the Oppmann appellees and the MEV appellees on this count.

### 10. Count 12

{¶ 121} In the twelfth count, the County asserts a claim of civil conspiracy against the Oppmann appellees and the MEV appellees. The complaint alleges that the Oppmann appellees and the MEV appellees conspired to insure the sale of the parking garage, and to obtain and inflate the sale price. Similar to Count 10, we find that the underlying allegations sound in fraud, and we therefore apply the four-year statute of limitations in R.C. 2305.09. Using the discovery date of July 29, 2008, we find that this claim is time barred, and we hold that the trial court did not err in awarding summary judgment on this count in favor of the Oppmann appellees and the MEV appellees.

### 11. Count 13

{¶ 122} In its thirteenth and final count, the County asserts a claim against all appellees for civil liability for criminal acts pursuant to R.C. 2307.60(A)(1), which provides,

58.

Anyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law, may recover the costs of maintaining the civil action and attorney's fees if authorized by any provision of the Rules of Civil Procedure or another section of the Revised Code or under the common law of this state, and may recover punitive or exemplary damages if authorized by section 2315.21 or another section of the Revised Code.

Here, the County alleged that all appellees engaged in criminal acts including, bribery, intimidation, money laundering, racketeering, and obstructing justice.

{¶ 123} R.C. 2307.60 contemplates a penalty, therefore it is subject to the one-year statute of limitations in R.C. 2305.11(A).[13] *Steinbrick v. Cleveland Elec. Illuminating Co.*, 8th Dist. Cuyahoga No. 66035, 1994 Ohio App. LEXIS 3756, *5 (Aug. 25, 1994). Thus, applying the discovery date of July 29, 2008, we find that the claim for civil liability for criminal acts is barred by the statute of limitations. Therefore, we hold that the trial court did not err in awarding summary judgment in favor of all appellees on this claim.[14]

---

[13] "[A]n action upon a statute for a penalty or forfeiture shall be commenced within one year after the cause of action accrued." R.C. 2305.11(A).

[14] Notably, the trial court also held that a claim under R.C. 2307.60 is not a cognizable civil cause of action. However, during the pendency of this appeal, the Ohio Supreme Court has clarified that "By its plain and unambiguous language, R.C. 2307.60 creates a civil cause of action for damages resulting from any criminal act, unless otherwise prohibited by law." *Jacobson v. Kaforey*, Slip Opinion No. 2016-Ohio-8434, ¶ 13.

## E. Other Arguments Moot

{¶ 124} In addition to the above arguments, the County also raises as its fifth issue:

> Issue No. 5: The trial court erred in alternatively dismissing pursuant to Civ.R. 12(B)(6) and 9(B) Appellant's claims against Appellees Great Lakes for breach of contract (Count 2), unjust enrichment (Count 3), fraud (Count 4), breach of fiduciary duty (Count 5), fraud in the inducement (Count 6), declaratory judgment (Count 7), violation of the Ohio Corrupt Practices Act ("OCPA") (Count 9), civil conspiracy (Count 10), and civil liability for criminal acts (Count 13) pursuant to Civ.R. 12(B)(6) and 9(B) based on pleading deficiencies where Great Lakes relied "solely upon a [purported] contractual release" in its "converted" motion for summary [judgment].

{¶ 125} In light of our analysis above, finding that Great Lakes is entitled to summary judgment on all of the claims against it, we find the County's argument challenging the trial court's alternative reason for awarding summary judgment to be moot. Therefore, we find the County's fifth assignment of error to be without merit.

60.

## IV. Conclusion

{¶ 126} For the foregoing reasons, the County's 18 assignments of error are not well-taken. Moreover, we find that substantial justice has been done the party complaining, and the judgment of the Cuyahoga County Court of Common Pleas is affirmed. The County is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

Thomas J. Osowik, J.

James D. Jensen, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

Judges Mark L. Pietrykowski, Thomas J. Osowik and James D. Jensen, Sixth District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.